[No. A129167. First Dist., Div. Three. Aug. 5, 2011.]

In re S.H., a Person Coming Under the Juvenile Court Law.
SONOMA COUNTY HUMAN SERVICES DEPARTMENT, Plaintiff and
Respondent, v.
J.H., Defendant and Appellant.

**COUNSEL**

Matthew I. Thue, under appointment by the Court of Appeal, for Defendant and Appellant.

Bruce D. Goldstein, County Counsel, and Tara Harvey, Chief Deputy County Counsel, for Plaintiff and Respondent.

**OPINION**

**JENKINS, J.**—This is an appeal by J.H. (mother) from certain findings and orders made by the juvenile court subsequent to hearings held pursuant to Welfare and Institutions Code sections 366.26 and 366.3.[1] For reasons to be explained, we affirm.

---

[1] Unless otherwise stated, all statutory citations herein are to the Welfare and Institutions Code.

## FACTUAL AND PROCEDURAL BACKGROUND

On October 10, 2008, a section 300 petition was filed by respondent Sonoma County Human Services Department (department), alleging that mother placed her infant daughter (minor) at substantial risk of suffering serious physical harm or neglect as a result of her inability to provide care or protection due to a history of substance abuse, her lack of cooperation with hospital staff, and her previous failure to reunify with minor's siblings. (§ 300, subds. (b), (g), (j).) The section 300 petition was thrice amended, adding allegations under subdivisions (a) and (f) that two of minor's siblings were injured while in mother's care, and one of these sibling's injuries led to her death, which mother could not adequately explain.

On November 19, 2008, the juvenile court sustained the allegations in the second amended section 300 petition and, on March 3, 2009, declared minor a dependent of the court.[2]

On October 16, 2008, the juvenile·court found the Indian Child Welfare Act of 1978 (25 U.S.C. § 1901 et seq.) applied based upon proof that mother is a member of the Manchester Point Arena Band of Pomo Indians (Tribe). The Tribe advised the juvenile court that, although minor is considered an adoptable child, it would only support legal guardianship as a permanent plan in order to protect her best interests in a continued tribal relationship.[3]

On March 3, 2009, the juvenile court issued a dispositional order that, among other things, bypassed reunification services for mother pursuant to section 361.5, subdivision (b)(4), (6), and (10). Specifically, the juvenile court found clear and convincing evidence that mother caused the death of another child through abuse or neglect, that minor's half sibling had suffered severe physical abuse by parents, that reunification services for mother with respect to minor's half siblings had been terminated and that mother had not subsequently made a reasonable effort to treat the problems leading to the half siblings' removal.[4] The juvenile court also noted that mother was not

---

[2] Minor's father is not a party to this appeal.

[3] The Tribe formally intervened in the case on October 30, 2008.

[4] Section 361.5, subdivision (b) provides in relevant part: "(b) Reunification services need not be provided to a parent . . . when the court finds, by clear and convincing evidence . . . [¶] . . . [¶] (4) That the parent or guardian of the child has caused the death of another child through abuse or neglect. [¶] . . . [¶] (6) That the child has been adjudicated a dependent pursuant to any subdivision of Section 300 as a result of severe sexual abuse or the infliction of severe physical harm to the child, a sibling, or a half sibling by a parent or guardian, as defined in this subdivision, and the court makes a factual finding that it would not benefit the child to pursue reunification services with the offending parent or guardian. [¶] . . . [¶] (10) That the court ordered termination of reunification services for any siblings or half siblings of the child because the parent or guardian failed to reunify with the sibling or half

amenable to services and had not been successful at rehabilitating herself despite extensive efforts on her behalf by the department and the Tribe.

The juvenile court's decision to bypass services was consistent with the department's recommendation in the disposition report, which noted, among other things, that, while mother entered a residential treatment program on December 9, 2008, she left the program on January 24, 2009, and, as of the end of February 2009, had failed to enter a different program despite telling the department she would do so.

Minor was thereafter placed in the home of prospective guardians and, on September 24, 2009, the juvenile court ordered guardianship as the permanent plan and dismissed the dependency proceedings. Among other exit orders, the juvenile court ordered visitation between mother and minor to occur at least once a month.

Unfortunately, the legal guardianship terminated on November 24, 2009, after minor's guardians gave notice they were no longer willing to provide for her care. Accordingly, the juvenile court vacated its earlier order of dismissal and reinstated the dependency.

At a December 10, 2009 hearing on the department's request to change a court order, the department informed the juvenile court that a new placement agreeable to the Tribe had been found, and that it anticipated presenting new letters of guardianship to the court at the next hearing. The juvenile court then advised the parties to return for a permanency planning review hearing on February 25, 2010, prompting mother's attorney to state for the record that she was entitled to be considered for reunification services before new letters of guardianship could be presented given the termination of minor's original guardianship.

The February 25, 2010 permanency planning review hearing was ultimately continued until May 20, 2010, based upon the department's request to allow more time for minor to become attached to her new placement. In the meantime, the juvenile court ordered that mother's monthly visits with minor would resume in April.[5]

---

sibling after the sibling or half sibling had been removed from that parent or guardian pursuant to Section 361 and that parent or guardian is the same parent or guardian described in subdivision (a) and that, according to the findings of the court, this parent or guardian has not subsequently made a reasonable effort to treat the problems that led to removal of the sibling or half sibling of that child from that parent or guardian." (§ 361.5, subd. (b)(4), (6), (10).)

[5] The parties had informed the court that visitation in the previous months had been interrupted for various reasons, including the guardian's illness and paperwork issues.

In anticipation of the May 20 hearing, the department filed a status review report noting, among other things, it "appears that [mother] is at odds with her Tribe. She has been informed numerous times by the Tribe, and the Department concurs, that she would need to complete the attached ten-point treatment goal plan in order for any consideration of reunification for any of her children to be considered. She has not participated in any planning for reunification, much less participated in any of the ten-point plan." In addition, the report noted that "[mother] has been somewhat threatening to the current foster family, with threats made in the previous reporting period, and to the undersigned's knowledge, she continues to be unsupportive of this placement. It is sad to see [mother] staying stuck in her anger, and how this negatively impacts her involvement with her children and with her Tribe."

At the May 20, 2010 hearing, the juvenile court admitted the department's report into evidence, acknowledged its recommendation that a new guardianship be established, and scheduled a settlement conference for June 16, 2010.

. A contested hearing was then held on July 8, 2010, for which the parties submitted briefing on the issue of whether reunification services for mother should be considered, given that services for her had been bypassed. Following this hearing, the juvenile court denied mother's request to reconsider the issue of reunification services, affirmed guardianship as the permanent plan and appointed successor guardians. The juvenile court also ordered supervised visitation for mother twice annually (in June and Dec.) for two hours. The juvenile court then again dismissed the dependency proceedings.

On July 23, 2010, mother filed a timely notice of appeal of the juvenile court's July 2010 findings and orders.

## DISCUSSION

Mother raises two issues for our review. First, mother contends the juvenile court reversibly erred by refusing to revisit the issue of whether she should receive reunification services after minor's previously ordered legal guardianship was terminated and the dependency proceedings were reinstated for the purpose of establishing a new guardianship. Second, mother contends the juvenile court erred by limiting her visitation with minor to twice a year without first determining whether more frequent visitation would be detrimental to minor. We address each issue in turn below.

I.  *Did the juvenile court err by declining to revisit the reunification services issue when appointing new guardians?*

As set forth above, this dependency was dismissed after a legal guardianship was established as minor's permanent plan. However, on December 10,

2009, the juvenile court vacated the dismissal and reinstated the proceedings after minor's guardians requested that the guardianship be terminated. At that time, mother's counsel advised the juvenile court that, because the guardianship was being terminated, mother was entitled to be considered for reunification services pursuant to section 366.3.

Several months later, after ordering briefing and hearing argument on the issue, the juvenile court declined mother's request to consider reunification services for her. The juvenile court reasoned that a contested hearing on reunification services was not required because minor's permanent plan of legal guardianship remained unchanged by the termination of the original guardianship:

"When the guardianship was selected as the permanent plan back on September 24th, this Court retained jurisdiction over the guardianship and would have had jurisdiction over the guardianship until the child reached the age of majority, was emancipated or died.

"When the Court received notification as to the current position of the guardians, the Court would have, . . . if a successor guardian was available, the Court could have without resuming jurisdiction appointed successor guardians because the Court continued to have jurisdiction over the guardianship dealing with issues of visitation and the like.

"So each time there's a request made in a dependency guardianship case, [it] doesn't mean the Court reinstates the dependency proceedings and it resets the clock each time; so the Court is allowed to manage the guardianship without triggering the reinstatement of dependency proceedings.

"In this particular case, there were no successor guardians readily available. So the Court had to resume jurisdiction because there were no successor guardians. The permanent plan has been and continues to be guardianship. That has never changed. Successor guardians have now been located, appear to be appropriate from all accounts; no one has said they're not; and the Court is once again affirming that guardianship is the permanent plan and does appoint the successor guardians and adopting the orders and findings as it's relevant to the Court's ruling."

According to mother, the juvenile court's refusal to hold a contested hearing on whether to order reunification services pursuant to section 366.3 was erroneous and prejudicial. In making this argument, mother relies on both subdivision (b) and subdivision (f) of section 366.3. The following law applies.

■ When a permanent plan of legal guardianship is ordered for a minor, the juvenile court may, once the guardianship is established, dismiss the dependency proceedings and retain jurisdiction over the minor as a ward of the guardianship. (§§ 366.3, subd. (a), 366.4; see also Cal. Rules of Court, rule 5.740(a)(3); *In re D.R.* (2007) 155 Cal.App.4th 480, 486–487 [66 Cal.Rptr.3d 151].) Section 366.3 governs the termination of a guardianship. Relevant here, section 366.3, subdivision (b) provides: "If the court has dismissed dependency jurisdiction following the establishment of a legal guardianship . . . and the legal guardianship is subsequently revoked or otherwise terminated, the county department of social services or welfare department shall notify the juvenile court of this fact. The court may vacate its previous order dismissing dependency jurisdiction over the child. [¶] . . . [¶] Unless the parental rights of the child's parent or parents have been terminated, they shall be notified that the legal guardianship has been revoked or terminated and shall be entitled to participate in the new permanency planning hearing. The court shall try to place the child in another permanent placement. At the hearing, the parents may be considered as custodians but the child shall not be returned to the parent or parents unless they prove, by a preponderance of the evidence, that reunification is the best alternative for the child. The court may, if it is in the best interests of the child, order that reunification services again be provided to the parent or parents."

■ Section 366.3, subdivision (f), also relied upon by mother, applies where, unlike here, a child is in a placement *other than the home of a legal guardian* and jurisdiction has not been dismissed. Specifically, in such cases, section 366.3 requires a status review hearing to be held at least every six months. (§ 366.3, subd. (d).) During this hearing, "[i]f the reviewing body determines that a second period of reunification services is in the child's best interests, and that there is a significant likelihood of the child's return to a safe home due to changed circumstances of the parent, pursuant to subdivision (f), the specific reunification services required to effect the child's return to a safe home shall be described." (§ 366.3, subd. (e)(4).) Subdivision (f), in turn, provides: "Unless their parental rights have been permanently terminated, the parent or parents of the child are entitled to receive notice of, and participate in, those hearings. It shall be presumed that continued care is in the best interests of the child, unless the parent or parents prove, by a preponderance of the evidence, that further efforts at reunification are the best alternative for the child. In those cases, the court may order that further reunification services to return the child to a safe home environment be provided to the parent or parents up to a period of six months, and family maintenance

services, as needed for an additional six months in order to return the child to a safe home environment."[6] (§ 366.3, subd. (f).)

■ According to mother, section 366.3, subdivisions (b) and (f), by their express terms, required the juvenile court in this case to consider anew whether to grant her reunification services before appointing new guardians for minor. Her argument, of course, hinges on the well-established principles of statutory construction. Specifically, "[i]n determining the proper scope of section 366.3, our primary task is to determine legislative intent. In order to do so, we must begin with the wording of the statute itself. [Citation.] Where the language of the statute is clear, there is no need to resort to other indicia of legislative intent; no need for construction then exists. [Citations.]" (*In re Kelly D.* (2000) 82 Cal.App.4th 433, 437 [98 Cal.Rptr.2d 188].) We simply give the statute's words a " 'plain and commonsense meaning.' [Citation.] 'In doing so, however, we do not consider the statutory language "in isolation." [Citation.]' [Citation.] Rather, we construe the words of the statute ' "in context, keeping in mind the nature and obvious purpose of the statute . . . ." [Citation.]' (*West Pico Furniture Co. v. Pacific Finance Loans* (1970) 2 Cal.3d 594, 608 [86 Cal.Rptr. 793, 469 P.2d 665].) In other words, we 'must harmonize "the various parts of a statutory enactment . . . by considering the particular clause or section in the context of the statutory framework as a whole" ' (*People v. Mendoza* [(2000)] 23 Cal.4th [896,] 908 [98 Cal.Rptr.2d 431, 4 P.3d 265]), so that all of the statutes in the scheme will 'have effect.' (*Travelers Indemnity Co. v. Gillespie* (1990) 50 Cal.3d 82, 100 [266 Cal.Rptr. 117, 785 P.2d 500].) And '[w]e must also avoid a construction that would produce absurd consequences, which we presume the Legislature did not intend.' (*People v. Mendoza, supra*, 23 Cal.4th at p. 908; accord, *Flannery v. Prentice* (2001) 26 Cal.4th 572, 578 [110 Cal.Rptr.2d 809, 28 P.3d 860].)" (*In re Charles G.* (2004) 115 Cal.App.4th 608, 614 [9 Cal.Rptr.3d 503].) Further, we keep in mind that "every word, phrase and provision employed in a statute is intended to have meaning and to perform a useful function." (*In re Kelly D., supra*, 82 Cal.App.4th at p. 437.) As such, we must avoid a construction that would render any word, phrase or provision superfluous. (*Ibid.*)

---

[6] California Rules of Court, rule 5.740(c)(4), employing some of the same language as section 366.3, subdivision (f), provides: "If the petition [to terminate a guardianship or to modify a guardianship order] is granted and the court continues or resumes dependency, the court must order that a new plan be developed to provide stability and permanency to the child. Unless the court has already scheduled a hearing to review the child's status, the court must conduct a hearing within 60 days. Parents whose parental rights have not been terminated must be notified of the hearing on the new plan. The court may consider further efforts at reunification only if the parent proves, by a preponderance of the evidence, that the efforts would be the best alternative for the child."

As noted above, in this case, in denying mother's request for a contested hearing on reunification services, the juvenile court relied on the fact that the permanent plan of guardianship was undisturbed by termination of minor's original guardianship. According to the juvenile court, the only outstanding issues with respect to permanency planning in this case were locating a suitable successor guardian and issuing new letters of guardianship, rendering consideration of reunification services unnecessary. However, as mother points out, the juvenile court's reasoning in this regard has already been rejected by at least one appellate court.

Specifically, in *In re R.N.* (2009) 178 Cal.App.4th 557 [100 Cal.Rptr.3d 524] (*R.N.*), the juvenile court granted a section 388 petition filed by the child's aunt requesting to be appointed guardian after the child's original guardian died. In doing so, the juvenile court summarily denied the child's father's section 388 petition challenging the aunt's appointment as guardian and requesting that he be considered for the role and for reunification services. (178 Cal.App.4th at pp. 561–564.) In summarily denying the father's petition, the juvenile court in *R.N.* found it unnecessary to consider the father for the role of guardian and for receipt of reunification services because his petition failed to establish that it would be in the child's best interests to change her placement. (*Id.* at p. 564.)

Rejecting the juvenile court's decision and reasoning, the appellate court clarified that "Section 366.3 is implicated not only by petitions to terminate a guardianship, but by petitions to modify a prior guardianship order by, among other things, appointment of a successor guardian. Section 366.3's express provisions embody the Legislature's policy determination that, when a change in a guardianship is made, the dependency court must provide notice to parents, consider and evaluate possible custody solutions, and consider whether to provide reunification services. (See also Cal. Rules of Court, rule 5.740(c) [no distinction between petitions to terminate or to modify a guardianship].)" (*In re R.N., supra,* 178 Cal.App.4th at p. 566; accord, *In re Jessica C.* (2007) 151 Cal.App.4th 474, 481 [59 Cal.Rptr.3d 855] ["Section 366.3 recognizes that there may be a need to terminate a guardianship established as the permanent plan for a dependent child. To this end, it sets forth a procedure for notice, evaluation of the problems and possible solutions, and a mechanism by which reunification services to the parent(s) might be reinitiated if the guardianship is terminated."].) Thus, the *R.N.* court concluded that the juvenile court committed reversible error by denying the father his statutory rights under section 366.3 to participate in the hearing to

terminate or modify his child's guardianship and to be considered for, among other things, reunification services. (*In re R.N., supra,* 178 Cal.App.4th at p. 566.)

We agree with the *R.N.* court's interpretation of section 366.3, including the court's conclusion that the statute applies to any change in guardianship, whether there is a petition to terminate a guardianship or to modify a prior guardianship order by appointing a successor guardian. (*In re R.N., supra,* 178 Cal.App.4th at p. 566.) Accordingly, we reject the suggestion by the juvenile court in our case that mother's request pursuant to section 366.3 to consider reunification services was inappropriate because, even though there was a change in guardianship, the permanent plan remained the same.

The department makes an additional statutory interpretation argument with respect to section 366.3 in seeking affirmance of the trial court's ruling. Specifically, the department argues that the Legislature's use of the phrase "further reunification services" in section 366.3, subdivision (f), demonstrates the intent that, when a guardianship is being terminated, the juvenile court need not consider reunification services for a parent, like mother, initially bypassed for services pursuant to section 361.5, subdivision (b). Similar to section 366.3, subdivision (f), California Rules of Court, rule 5.740(c)(4) (rule 5.740(c)(4)) authorizes the juvenile court to consider "further efforts at reunification" if the parent proves by a preponderance of the evidence that such efforts would be in the child's best interests, and section 366.3, subdivision (b), provides that reunification services may "again" be provided to the parent if the juvenile court finds it would be in the child's best interests.

Contrary to the department's argument, however, we decline to interpret the terms "further" and "again" in section 366.3 and rule 5.740(c)(4) in such a manner as to impose a restriction on the class of parents entitled to be considered for reunification services during postpermanency proceedings to terminate or modify a legal guardianship. In reaching this conclusion, we first look to the ordinary dictionary definition of these terms (*In re Kelly D., supra,* 82 Cal.App.4th at p. 437), which, in this case, is not particularly enlightening. For example, "again" is defined as "another time," "once more," "anew," or "in addition." (Merriam-Webster's Collegiate Dict. (11th ed. 2007) p. 23.) "Further," in turn, is defined as "in addition" or "to a greater degree or extent." (*Id.* at p. 509.)

As these definitions reflect, the meaning of "again" and "further" for purposes of section 366.3, subdivisions (b) and (f), respectively, are quite

ambiguous. On the one hand, the terms could simply mean that, under section 366.3, the juvenile court should consider the broader issue of whether to grant (or deny) reunification services anew, more thoroughly, or in addition to other issues. On the other hand, the terms could mean, as the department suggests, that the juvenile court should consider the more narrow issue of whether to grant reunification services once more or an additional time to a parent who already received such services. Either of these interpretations, we conclude, would be reasonable.

Further, looking more closely at these terms in context, keeping in mind the nature and purpose of section 366.3 (*In re Kelly D., supra*, 82 Cal.App.4th at p. 437), we note that neither subdivision (b) nor subdivision (f) of section 366.3 expressly authorizes the juvenile court to provide reunification services to parents previously bypassed for such services, but neither does the identified statutory language expressly restrict the juvenile court from doing so. Moreover, section 366.3 is quite clear that the juvenile court *must* provide all parents whose parental rights remain intact both notice that the legal guardianship has been revoked or terminated and the opportunity "to participate in the new permanency planning hearing." (§ 366.3, subd. (b).) Section 366.3 is equally clear that the juvenile court *may* consider the parents as custodians, however "the child shall not be returned to the parent or parents unless they prove, by a preponderance of the evidence, that reunification is the best alternative for the child." (§ 366.3, subd. (b); see also *In re Z.C.* (2009) 178 Cal.App.4th 1271, 1283 [101 Cal.Rptr.3d 49] [under § 366.3, subd. (b), "if the parental rights have not been terminated, a parent must receive notice of the hearings and may present evidence that reunification services are in the child's best interests"].) And, while the circumstances under which the child may be returned to the parent are indeed restricted, nowhere in the statute does the Legislature restrict the nature or scope of the parent's participation in these proceedings. Had the Legislature intended to limit the parent's statutory right of participation to matters *other than* presenting evidence that reunification services should be offered to facilitate the possible return home of the child (an odd, if not absurd result), we believe the Legislature would have employed clearer language. (See *People v. Mendoza, supra*, 23 Cal.4th at p. 908 [courts must "avoid a construction that would produce absurd consequences, which we presume the Legislature did not intend"].)[7]

---

[7] Further, we have found no evidence in the legislative history of section 366.3 suggesting the Legislature intended to limit the trial court's otherwise broad discretion to reconsider the reunification services issue at this stage of the proceedings to only those parents initially receiving such services. (See *Snukal v. Flightways Manufacturing, Inc.* (2000) 23 Cal.4th 754, 779 [98 Cal.Rptr.2d 1, 3 P.3d 286] [where statutory language is "sufficiently ambiguous" the court may consider evidence of the Legislature's intent beyond the words of the statute]; *Flannery v. Prentice, supra*, 26 Cal.4th 572, 579.) Nor does anything in the statutory law

As a final note on this issue, we add that interpreting section 366.3 so as *not* to unnecessarily restrict the parent's statutory right to participate in the new permanency planning hearing is, we conclude, more consistent with the dependency law's express goal of protecting the minor's best interests because it leaves to the juvenile court in the first instance the determination of whether reunification services should be ordered. The juvenile court, not this court, is far better suited to this task, given its superior proximity to the parties and their constantly changing needs.

Accordingly, for the reasons stated, we reject the department's proposed statutory interpretation of section 366.3 as an alternative basis for affirming the juvenile court's denial of mother's request to be considered for reunification services before the appointment of successor guardians for minor.

However, ultimately, our inquiry with respect to mother's challenge does not end with our legislative interpretation of section 366.3. While we have already concluded the juvenile court erred by reading section 366.3 in such a way as to preclude mother from reopening the issue of reunification services, this court recently confirmed " '[t]he standard of review where a parent is deprived of a due process right is whether the error was harmless beyond a reasonable doubt. [Citation.]' (*In re Thomas R.*[ (2006)] 145 Cal.App.4th [726,] 734 [51 Cal.Rptr.3d 864].)" (*M.T. v. Superior Court* (2009) 178 Cal.App.4th 1170, 1182 [101 Cal.Rptr.3d 183].) As such, the juvenile court's order must stand so long as we can conclude that "[mother] suffered no prejudice either because it would have been an abuse of discretion to rule in [her] favor [citation] or because it is not reasonably probable that [she] would have obtained a more favorable result had the court exercised its discretion." (*S.T. v. Superior Court* (2009) 177 Cal.App.4th 1009, 1016 [99 Cal.Rptr.3d 412]; see also *M.T. v. Superior Court, supra,* 178 Cal.App.4th at pp. 1181–1182.)

Having reviewed the record in this case, we would indeed conclude mother suffered no prejudice from the juvenile court's refusal to consider granting her reunification services, as there is simply no evidentiary basis for doing so. In particular, while the department opposed mother's request for consideration of reunification services after the dependency proceedings were reinstated and the original guardianship was terminated, it nonetheless addressed the reunification issue in a report dated May 6, 2010, in anticipation

---

preclude a parent initially bypassed for reunification services from filing a section 388 petition requesting reconsideration of the reunification services issues based upon a showing of changed circumstances. (*Kimberly H. v. Superior Court* (2000) 83 Cal.App.4th 67, 72–73 [99 Cal.Rptr.2d 344].) As such, as a practical matter, even assuming the department's interpretation of section 366.3 was correct, parents bypassed for services could nonetheless seek reconsideration of the services issue.

of the postpermanency planning review hearing. In this report, the department advised the court that mother "has been informed numerous times by the Tribe, and the Department concurs, that she would need to complete the attached ten-point treatment goal plan in order for any consideration of reunification for any of her children to be considered. She has not participated in any planning for reunification, much less participated in any of the ten-point plan."[8] The report also noted that mother remained consumed by anger, had made threats to minor's foster family, and had generally been unsupportive of minor's placement despite the negative impacts her conduct had on her relationship with both minor and the Tribe. This evidence of mother's poor conduct in the postpermanency period, which mother does not appear to have addressed, is in addition to the clear and convincing evidence underlying the juvenile court's initial decision to bypass services for her, including her role in the death of another child through abuse or neglect and in the severe physical abuse of minor's half sibling, her failure to make a reasonable effort to treat the problems that had led to the removal of minor's half siblings, and her failure to rehabilitate despite extensive efforts on her behalf by the department and the Tribe. Under these circumstances, there is no reasonable probability that mother would have obtained a more favorable result had the juvenile court reopened the reunification services issue before appointing the successor guardians. (See *S.T. v. Superior Court, supra,* 177 Cal.App.4th at p. 1016; *M.T. v. Superior Court, supra,* 178 Cal.App.4th at pp. 1181–1182.)

II. *Did the juvenile court err by limiting visitation to twice a year?*

Next, we address mother's remaining argument that the juvenile court erred by limiting her visitation with minor to twice a year.

"There is no question but that the power to regulate visitation between minors determined to be dependent children [citation] and their parents rests in the judiciary." (*In re Jennifer G.* (1990) 221 Cal.App.3d 752, 756 [270 Cal.Rptr. 326].) As such, dependency law affords the juvenile court great discretion in deciding issues relating to parent-child visitation, which discretion we will not disturb on appeal unless the juvenile court has exceeded the

---

[8] This 10-point plan was as follows: (1) accepting her role in the death of her daughter; (2) accepting her role in injuring her son; (3) demonstrating consistent and appropriate contact with a social worker and caretaker for another of minor's siblings; (4) remaining sober and drug free with ongoing participation in 12-step or SCIHP (Sonoma County Indian Health Project, Inc.); (5) successfully completing anger management and domestic violence victim programs, and demonstrating that she is not involved in violent relationships; (6) demonstrating an understanding of child development and competency meeting the social, emotional, physical, nutritional, medical, educational and special needs of her children; (7) maintaining employment and suitable housing; (8) obey all laws; (9) fully cooperating with recommendations of any treatment program; and (10) demonstrating an ability to communicate and cooperate openly and honestly with child protective services.

bounds of reason. (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318 [27 Cal.Rptr.2d 595, 867 P.2d 706].)

Where, as here, a permanent plan of legal guardianship is ordered for a child, section 366.26, subdivision (c)(4)(C) governs parent-child visitation. Specifically, this provision states: "The court shall also make an order for visitation with the parents or guardians unless the court finds by a preponderance of the evidence that the visitation would be detrimental to the physical or emotional well-being of the child." (§ 366.26, subd. (c)(4)(C).)

In this case, consistent with section 366.26, subdivision (c)(4)(C), the juvenile court, at the time the legal guardianship was established, made a finding that visitation with mother would not be detrimental to minor and, thus, ordered supervised visitation once a month. Later, when minor's initial guardianship was terminated and a successor guardian was being appointed, the juvenile court modified this visitation order to reduce the frequency of visitation to twice a year (in June and Dec.) for two hours. It is this modification of the visitation order that mother challenges on two grounds, both of which we address below.

■ First, mother argues the reduction in the frequency of visitation was improper in the absence of a finding by the juvenile court that more frequent visitation would be detrimental to minor. We, however, disagree that such a finding was required. As set forth above, the governing statute, section 366.26, subdivision (c)(4)(C), requires a detriment finding before the juvenile court is authorized to *deny* visitation; not before the juvenile court is authorized to modify a term of a previous order *granting* visitation.

Second, mother argues this court should "interpret section 366.26, subdivision (c)(4)(C) to require dependency courts to order visitation 'as frequent as possible, consistent with the well-being of the child.' (See § 362.1, directing that parent-child visits must be as frequent as possible during the reunification period; see also *In re Randalynne G.* (2002) 97 Cal.App.4th 1156, 1169 [118 Cal.Rptr.2d 880] [explaining that what is in the best interests of the child is 'essentially the same as that which is not detrimental to the child'].)" However, in so arguing, mother again asks us to read a requirement into the statute that simply is not there. As before, we decline her request.

■ Indeed, it is clear from the statutory scheme governing dependency proceedings that the Legislature did *not* intend the "frequent as possible" requirement to apply where, as here, a permanent placement has been ordered for a child. Section 362.1, the statute governing parent-child visitation during the reunification stage of dependency, explains quite clearly that visitation

must be "as frequent as possible, consistent with the well-being of the child" in order "to maintain ties between the parent or guardian and any siblings and the child, and to provide information relevant to deciding if, and when, to return a child to the custody of his or her parent or guardian . . . ." (§ 362.1, subd. (a).)

However, the objectives identified in section 362.1, subdivision (a), are no longer valid where, as here, reunification services have been bypassed and a permanent plan of guardianship has been ordered. As the Supreme Court explains, at this point, "the parents' interest in the care, custody and companionship of the child are [*sic*] no longer paramount . . . [and] 'the focus shifts to the needs of the child for permanency and stability.' " (*In re Stephanie M., supra*, 7 Cal.4th at p. 317, quoting *In re Marilyn H.* (1993) 5 Cal.4th 295, 309 [19 Cal.Rptr.2d 544, 851 P.2d 826].) Accordingly, the court must turn its focus to the child's best interests, rather than the parent's, in deciding issues that may arise. (See also *In re Danielle W.* (1989) 207 Cal.App.3d 1227, 1238 [255 Cal.Rptr. 344]; *In re Stephanie M., supra*, 7 Cal.4th at p. 317 [the juvenile court must focus on the child's interests rather than the parent's interests once reunification services have terminated]; see § 366.21.)

Moreover, with these more appropriate objectives in mind, we conclude the juvenile court's order reducing the frequency of visitation between mother and minor to twice a year for two hours was appropriate. As the record reflects, the juvenile court, before making this order, was properly focused on the minor's interest in deepening her attachment to her new caregivers without unnecessary disruption from mother, who, according to the social worker, opposed the placement and acted at times with hostility towards minor's caregivers.[9] This focus on the attachment process was particularly important given that minor's new caregivers were her third set in her mere 16 months of life. Thus, in light of minor's unique needs and family characteristics, we conclude the juvenile court's decision to reduce the frequency of visitation was both reasonable and adequately supported by the record. (See *In re Moriah T.* (1994) 23 Cal.App.4th 1367, 1374–1376 [28 Cal.Rptr.2d 705] ["Visitation arrangements demand flexibility to maintain and improve the ties between a parent or guardian and child while, at the same time, protect the child's well-being."]; *In re S.H.* (2003) 111 Cal.App.4th 310, 317 [3 Cal.Rptr.3d 465] ["It is the juvenile court's responsibility to ensure regular parent-child visitation occurs while at the same time providing for flexibility in response to the changing needs of the child and to dynamic family circumstances."].) Accordingly, the court's decision will stand.

---

[9] The order for visitation twice a year was consistent with the department's recommendation.

## DISPOSITION

The juvenile court's July 2010 findings and order are affirmed.

Pollak, Acting P. J., and Siggins, J., concurred.