Filed 7/31/24  R.S. v. Superior Court CA5

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FIFTH APPELLATE DISTRICT

| | |
|---|---|
| R.S.,<br><br>　　　　Petitioner,<br><br>　　　　v.<br><br>THE SUPERIOR COURT OF TULARE COUNTY,<br><br>　　　　Respondent;<br><br>TULARE COUNTY HEALTH AND HUMAN SERVICES AGENCY,<br><br>　　　　Real Party in Interest. | F087941<br><br>(Super. Ct. Nos. JJV073037A & JJV073037C)<br><br><br>**OPINION** |

---

## THE COURT[*]

ORIGINAL PROCEEDINGS; petition for extraordinary writ.  John P. Bianco, Judge.

Jordan Brown for Petitioner.

No appearance for Respondent.

No appearance for Real Party in Interest.

-ooOoo-

---

[*]　　Before Levy, Acting P. J., Franson, J. and Snauffer, J.

Petitioner R.S. (mother), seeks an extraordinary writ (Cal. Rules of Court, rules 8.450–8.452)[1] from the April 17, 2024, order denying her reunification services and setting a Welfare and Institutions Code section 366.26[2] hearing for August 12, 2024, as to her children, J.S. and M.N. (the children). We issued an order to show cause. The Tulare County Health and Human Services Agency (agency) informed this court that it would not file a response.

Mother's children were placed in a guardianship of mother's choosing at the time they were removed from her care. Over three years later, the guardians asked that guardianship be dismissed as they wished to adopt the children. The agency objected, arguing that mother should be allowed reunification services prior to a permanent plan of adoption as she had not waived reunification services, no bypass provisions for reunification services existed at the time the guardianship was established, and mother's parental rights had not been terminated. The juvenile court disagreed and found mother had waived such services when she first agreed to guardianship. Although we agree that mother waived reunification services in the context of the guardianship, the question at issue is whether mother waived such services for all future hearings in regard to reunification services.

Mother's petition provides very little helpful analysis, and we find little authority one way or the other for her position. For reasons explained below, we deny the petition.

PROCEDURAL AND FACTUAL SUMMARY

On July 13, 2020, the children, then a newborn and a five year old,[3] were removed from mother's custody by the agency, due to mother's alleged drug use, homelessness

---

[1]     All further rule references are to the California Rules of Court.

[2]     All statutory references are to the Welfare and Institutions Code unless otherwise stated.

[3]     Mother has another child, A.S., then age two, who was removed at the same time but placed in the care of her father and the petition dismissed as to her.

and mental health issues. Mother reported that she was not able to care for the children and "left them with friends." At the detention hearing the following day, the juvenile court found that the children fell within section 300.

Jurisdiction and disposition hearings did not occur until September 24, 2020. The report prepared in anticipation of jurisdiction/disposition recommended the children be placed with S.N. and J.N., as requested by mother, under legal guardianship, and "[t]herefore, no services are being recommended to the mother." If mother was "ordered to participate in services to regain custody of her children," the department recommended mother participate in mental health services, alcohol and drug assessment, random drug testing, and parenting education.

At the time of the jurisdiction/disposition hearing, mother completed a written waiver of rights as to jurisdiction and submitted on the petition based on the social worker's report. As part of the waiver of rights, mother initialed the box that stated that she understood that "if the petition is found to be true and the child is declared a dependent of the court, the court may assume custody of the child, and under certain circumstances, it is possible that no reunification services will be offered or provided." At the hearing, mother acknowledged that it was her initials and signature on the waiver of rights forms and that she had time to speak with counsel to understand the contents of the form. Legal guardianship was granted to S.N. and J.N.[4] and "jurisdiction and dependency dismissed."

In the findings and orders after the September 24, 2020, hearing, under the heading "Guardianship (WIC, § 360(a))", boxes #30 and #31 are marked. Box #30 states mother has advised the court that she was not interested in family maintenance or family reunification services. And box #31 states that mother has "been advised that no

---

[4]    Mother explained that J.N. was listed on M.N.'s birth certificate as her father, although he was not her biological father (mother was not sure who was). According to mother, J.N. was on the birth certificate because he and his wife S.N. were going to adopt the child.

reunification services will be provided if a guardianship is established." The transcript of the hearing contains no oral advisement to mother on the waiver of reunification services.

Over three years later, on November 14, 2023, the guardian, S.N., filed a section 388 petition requesting the guardianship of the children be terminated because mother had not seen the children in over two years, she had no bond with the children (then ages three and eight years old), and only had contact with the children sporadically via telephone. The petition requested the juvenile court reduce mother's visitation to a "Zoom" call once a month. The petition stated the guardians "[w]ant to adopt both children."

On December 13, 2023, the agency filed a response to the guardians' section 388 petition, recommending the petition be denied, a disposition hearing be set, and mother be offered reunification services prior to moving to a permanent plan of adoption.

The agency contacted the guardians, who reported that mother had not had an in-person visit for two years prior to visiting twice in September 2023. The guardians stated mother "does not care for [M.N.], only for [J.S.]."

The agency contacted mother at the end of November 2023. Mother was living with her husband and her two children, a one year old and four month old. Mother reported that her husband had a history of drug use but had been clean for about a year. She did report that he had gotten a DUI with the children in the car. Mother denied any drug use on her part, although she had tested positive for methamphetamine one week prior to M.S.'s birth. Mother denied any criminal background, but she had a criminal arrest in 2019; her husband had been arrested in 2018 for an unknown reason.

Mother reported that she was not in agreement with the current guardians adopting the children, and it was always her intent to petition to get her children back, and that she was in the process of getting another daughter (A.S.) back at that time. She stated that once she got her other daughter back, she was planning on getting J.S. and M.N. back as well. Mother reported that she did not attend visits with the children because she did not

4.

like it that the guardians "record[] the visits." Mother stated that, if she did not reunify with her children, she wanted another person, her godmother, to adopt them, not the current guardians. Mother stated she was not participating in any services at the time but was open to any recommendations for services.

At the December 18, 2023, hearing on the section 388 petition, counsel for the agency argued that, at the time the guardianship was established, mother did not want to participate in services because she wanted the children to be with the guardians. However, it was the agency's position that a contested disposition hearing needed to be set and that mother was entitled to reunification services "unless there's a bypass" and "I have no idea if there is."

The juvenile court resumed jurisdiction and set the matter for a contested disposition hearing February 5, 2024. The December 18, 2023, minute order indicates that the section 388 petition was denied, but the transcript of the hearing indicates no ruling on the section 388 petition was made, but that a change in mother's visitation requested in the section 388 petition was addressed.

On February 5, 2024, the agency filed a report and recommended again that the children continue to be adjudged dependents of the court and mother be offered reunification services. During the February 5, 2024, hearing, the juvenile court stated it was "a little confused" by the recommendation that reunification services be provided mother. Counsel for the agency explained that mother's case was "very unusual," but that mother had waived reunification services in the context of the guardianship being established but not for future purposes. The agency stated:

> "In looking at it, we became a little concerned as mother had waived reunification services to allow this guardianship. Her services weren't terminated. So one of the requirements to set a .26, you have to find the parents had either been denied services or services were terminated. So it felt unfair, and it didn't seem to be correct to go toward setting of a .26 to consider adoption without at least giving the parents an option either to participate in services or decline. Based on the disposition report, the

5.

mother does want to participate in services. So the Agency is prepared to offer her reunification services, and that's where we're at today."

Counsel for children objected to reunification services being offered mother, due to the length of time that had elapsed with little contact from mother. Counsel noted mother and children had "not much of a relationship at all," that M.N. had "only ever lived" with the guardians and J.S. "very much wants to be adopted" by the guardians. Counsel asked that a section 366.26 hearing be set to look at permanency for the children. Counsel for the guardians agreed with children's counsel.

The agency then suggested setting it for a contested hearing to "see where we are going," that there was "not much of a legal basis" to terminate services under section 361.5, subdivision (b),[5] "but we can take another look at things." The juvenile court requested points and authorities on the issue to see if offering mother reunification services was "legally required." The disposition hearing was continued to March 27, 2024.

The agency stated that the continuance would allow the agency "to look further into it" and "give mother an opportunity voluntarily to participate and make progress in some of the services to see if … she's committed to making these changes."

The agency's recommendation for the March 27, 2024, hearing was again that mother be offered services. However, during the hearing, the juvenile court stated that, in its opinion, the section 360 guardianship precluded the agency from offering services to mother. As stated by the juvenile court:

> "[T]here was a discussion among the Court and counsel with regard to the status of the case. It's this Court's opinion that the 360 guardianship precludes the Agency from providing services to the mother. There's been a request to set this matter for a .26 hearing."

After addressing the issue of J.S.'s visits with mother, which he responded negatively to, it was decided to allow the issue to be worked out in therapy. The agency

---

[5]     Section 361, subdivision (b) provides for bypass of services.

then asked that the disposition hearing again be continued, and a section 366.26 hearing not be set "today."

Disposition was continued to April 17, 2024, to allow the agency to confer with mother "with regard to the Court's position regarding reunification services."

On April 12, 2024, the agency filed points and authorities in which it again argued that mother was entitled to services, as there was no written waiver of future reunification services. The agency stated, in its points and authorities, that:

> "As to the request to adopt the children (set a WIC 366.26 hearing), the process seems less clear. A search could not locate any published cases directly addressing this issue. Had the guardianship been established under WIC 360 as amended in 2023,[6] the agency agrees that the court could schedule a WIC 366.26 hearing, if the guardian demonstrated a change of circumstances and that considering an adoption plan would be in the children's best interest." (Fn. omitted.)

At the hearing on April 17, 2024, the juvenile court found that, pursuant to section 360 guardianship, while a written waiver of services was required currently, a written waiver was not required by the code in 2020 when the guardianship at issue was granted. It further found that the written waiver requirement was not retroactive, and that mother had knowingly and intelligently waived her right to reunification services at the September 24, 2020 hearing. The juvenile court stated it based its finding of waiver on the jurisdiction/disposition report and minute order from the September 24, 2020 hearing.

The juvenile court also stated it reviewed the section 388 petition filed by the guardians which had two requests: one to modify visitation and the second request for an adoption. The juvenile court stated that it had made a ruling earlier on the request for visitation and then addressed the issue of adoption, stating:

> "As this Court interprets it, [the guardian's] request with regard to adoption is simply a request and procedurally then the Agency should set the matter for a 366.26 hearing based on a legal guardian's request to provide a more permanent plan for the minor children. [¶] So if that is the request of the

---

**6**     Presumably the requirement of a written waiver?

7.

Agency, the Court will set this matter over for a .26. There is no 388. The Court further notes there's no 388 that has been filed by the mother requesting relief from this Court."

The Agency then submitted.

Mother objected to the juvenile court setting a 366.26 hearing, stating she had only waived services for purposes of establishing the guardianship. The juvenile court stated the disposition hearing had been "improperly set" because there was no disposition that could be offered mother. Under the juvenile court's analysis:

> "[A] guardianship under Welfare and Institutions Code section 360, is a guardianship that is done after the petition has been found true. Mother or parent has a right, under the code, to services for a minimum of six months, in which it can reunify with the child. The guardianship that is provided for under … [section] 360 is based on the mother waiving, and that's key, that she waives her services that were found – based on the petition that was found true.

> "It was not a contractual agreement that mother is entering into an agreement with Child Welfare Services that the children would never be adopted, nor that they will always be in a legal guardianship. The policy under … section 300 is that in addition to providing that the children be safe, in addition to a goal that parents reunify with their children, there is a third rule that is just as important, which is permanency for the child and a permanent plan, which can include not only legal guardianship, but adoption.

> "As the Court sees [section] 360, in essence what the parties are agreeing to, is bypass reunification services and move directly to a permanent plan of legal guardianship. That is what the parties agreed to, but it does not waive any parties' right to bring a modification motion. It's in essence a guardianship based on the Probate Code that is jurisdictionally under the Juvenile Code, and a guardian has the ability under the [section] 300 code, to ask for a more permanent plan, which is adoption, which is the preferred plan in cases. That is not waived.

> "There's no waiver of a permanent plan and it would not be in the child's best interest not to be able to have a more permanent plan simply because the parent wishes to avoid going through services with the Agency. I think it puts you in a position that you're in on a permanent plan and under the code, that permanent plan allowed for a guardian to seek an adoption. It also allows a parent to terminate the guardianship and have the

8.

child placed back with the parent under the code.  I believe that is a situation that we are in in this particular case.  I'm not predetermining whether it is appropriate for the guardianship or the adoption to occur or the guardianship to remain or whether or not the child should be returned to the mother.  Those are all issues that can be addressed at the .26 hearing.  Based on the request of the Agency, the Court will set the matter for a .26."

Children's counsel was in agreement that mother had had the opportunity to receive services but chose not to.  The agency submitted.  Over objection from mother's counsel, the juvenile court then set a section 366.26 hearing for August 12, 2024.

## DISCUSSION

### *The Extraordinary Writ Petition*

The purpose of the extraordinary writ petition is to allow the appellate court to achieve a substantive and meritorious review of the juvenile court's orders and findings issued at the setting hearing in advance of the section 366.26 hearing.  (§ 366.26, subd. (*l*)(4)(A).)  Rule 8.452, which sets forth the content requirements for an extraordinary writ petition, requires the petitioner to identify the error(s) he or she believes the juvenile court made and to support each alleged error with argument, citation to legal authority, and citation to the appellate record.  (Rule 8.452(b).)  In keeping with rule 8.452(a)(1), we will liberally construe a writ petition in favor of its adequacy where possible, recognizing that a parent representing him or herself is not trained in the law.  Nevertheless, the petitioner must at least articulate a claim of error and support it by citations to the record.  Failure to do so renders the petition inadequate in its content and the reviewing court need not independently review the record for possible error.  (*In re Sade C.* (1996) 13 Cal.4th 952, 994.)

### *Section 360 Guardianship*

"[S]ection 360[, subdivision (a)] is triggered by the custodial parent's express approval of both a guardianship for the child and the prospective guardian."  (*In re Summer H.* (2006) 139 Cal.App.4th 1315, 1331; *In re G.W.* (2009) 173 Cal.App.4th 1428, 1442.)  It is an "alternative procedure for appointing a guardian when the parent

acknowledges early in the dependency proceedings that he or she cannot, and will not be able to, even after family reunification services, provide adequate care for the child." (*In re Summer H.,* at p. 1325.) "A section 360 guardianship … occurs at an early stage of the proceedings and requires parental consent  In this way, a section 360 guardianship more closely resembles one ordered by the probate court than one ordered late in the dependency proceedings pursuant to section 366.26." (*Id.* at pp. 1332–1333; *In re G.W., supra,* 173 Cal.App.4th at p. 1442.)

"Before the juvenile court may appoint a legal guardian pursuant to subdivision (a) of section 360, each of the following must occur: (1) the court must find that the child is a person described by section 300; (2) the parent must advise the court that he or she is not interested in family maintenance or family reunification services;[7] (3) the court must determine that a legal guardianship is in the best interests of the child; (4) the parent and the child must agree to the appointment;[8] (5) the court must advise the parent and child that reunification services will not be provided; and (6) the court must order an assessment of the person whom the court anticipates appointing as the legal guardian. (§ 360, subd. (a).)" (*In re G.W., supra,* 173 Cal.App.4th at p. 1437.)

Accordingly, a juvenile court may properly establish a legal guardianship for the children at issue when the court agrees with the parent that it is in the best interests of the children to do so.  (§ 360, subd. (a).)

---

**7**    In 2020, section 360 did not require the parent to sign a written waiver of services, but only that the court advise the parent that no reunification services would be provided as a result of the establishment of a guardianship.  (Stats. 2010, c. 559 (A.B. 12), § 11.) In 2023, section 360 was amended to require the parent to sign a written waiver of reunification services before a guardianship could be established in lieu of dependency. (Stats. 2022, c. 780 (A.B. 2309), § 2, effective January 1, 2023.)

**8**    The child need not agree to the guardianship if "the child's age or physical, emotional, or mental condition prevents the child's meaningful response."  (§ 260, subd. (a).)

*Waiver of Reunification Services as to Guardianship*

Mother argues there is no oral or written waiver of reunification services in the record. We disagree and find, specifically, that mother waived services for purposes of the guardianship under section 360.

" 'A judgment or order of the lower court is *presumed correct*. All intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown.' " (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564.)

As chronicled above, the report prepared in anticipation of jurisdiction/disposition recommended the children be placed with S.N. and J.N. under legal guardianship and "therefore, no services are being recommended to the mother."

At the time of the jurisdiction/disposition hearing, mother completed a waiver of rights as to jurisdiction and submitted on the petition based on the social worker's report. As part of the waiver of rights, mother initialed the box that stated she understood that "if the petition is found to be true and the child is declared a dependent of the court, the court may assume custody of the child, and under certain circumstances, it is possible that no reunification services will be offered or provided." At the hearing, mother acknowledged that it was her initials and signature on the waiver of rights forms and that she had time to speak with counsel to understand the contents.

In the findings and orders after the September 24, 2020, hearing, under the heading "Guardianship (WIC, § 360(a))", boxes #30 and #31 are marked. Box #30 states mother has advised the court that she is not interested in family maintenance or family reunification services. And box #31 states that mother has "has been advised that no reunification services will be provided if a guardianship is established." While the transcript of the hearing contains no specific oral advisement to mother on the waiver of reunification services, the record is clear that she was aware that waiver of reunification services was required as part of the guardianship.

*Future Waiver of Reunification Services*

Mother argues in the alternative, that, if this court finds that she did waive services for the purposes of setting up a guardianship under section 360, "such a waiver does not allow the waiver to be used when the permanent plan is changed to adoption and termination of parental rights", and she should have been given reunification services. Mother's petition, however, does not set forth any case or authority for this position.

We have found no cases directly on point, but take guidance from *In re S.H.* (2011) 197 Cal.App.4th 1542 (*S.H.*), in which the court addressed the issue raised by the mother there, that the juvenile court reversibly erred by refusing to revisit the issue of whether she should receive reunification services after the minor's previously ordered legal guardianship was terminated and dependency proceeding reinstated for the purpose of establishing a new guardianship. (*Id.* at p. 1549.)

In *S.H.*, the mother was bypassed for services, and, at disposition, dependency was dismissed after a legal guardianship was established as minor's permanent plan. However, several months later, the juvenile court vacated the dismissal and reinstated the proceedings after minor's guardians requested that the guardianship be terminated. At that time, mother's counsel advised the juvenile court that, because the guardianship was being terminated, mother was entitled to be considered for reunification services pursuant to section 366.3. (*S.H., supra,* 197 Cal.App.4th at pp. 1548, 1550.)

Several months later, after ordering briefing and hearing argument on the issue, the juvenile court declined mother's request to consider reunification services for her. The juvenile court reasoned that a contested hearing on reunification services was not required because minor's permanent plan of legal guardianship remained unchanged by the termination of the original guardianship as a new guardian was located. (*S.H., supra,* 197 Cal.App.4th at p. 1550.)

On appeal, the mother argued the juvenile court's refusal to hold a contested hearing on whether to order reunification services pursuant to section 366.3 was

erroneous and prejudicial. Section 366.3, subdivision (a) provides: When a permanent plan of legal guardianship is ordered for a minor, the juvenile court may, once the guardianship is established, dismiss the dependency proceedings, and retain jurisdiction over the minor as a ward of the guardianship. (§ 366.3, subd. (a); *In re D.R.* (2007) 155 Cal.App.4th 480, 486–487; see also rule 5.740(a)(3).)

Section 366.3 governs the termination of a guardianship. Relevant here, subdivision (b)(1) provides:

> "If the court has dismissed dependency jurisdiction following the establishment of a legal guardianship, or no dependency jurisdiction attached because of the granting of a legal guardianship pursuant to Section 360, and the legal guardianship is subsequently revoked or otherwise terminated, the court welfare department shall notify the juvenile court of this fact. The court may vacate its previous order dismissing dependency jurisdiction over the child."

And section 360, subdivision (b)(3) provides:

> "Unless the parental rights of the child's parent or parents have been terminated, they shall be notified that the legal guardianship has been revoked or terminated and shall be entitled to participate in the new permanency planning hearing. The court shall try to place the child in another permanent placement. At the hearing, the parents may be considered as custodians but the child shall not be returned to the parent or parents unless they prove, by a preponderance of the evidence, that reunification is the best alternative for the child. The court may, if it is in the best interests of the child, order that reunification services again be provided to the parent or parents."

According to the mother in *S.H.*, section 366.3, by its express terms, required the juvenile court to consider anew whether to grant her reunification services before appointing new guardians for the minor. In denying the mother's request for a contested hearing on reunification services, the juvenile court relied on the fact that the permanent plan of guardianship was undisturbed by termination of minor's original guardianship. According to the juvenile court, the only outstanding issues with respect to permanency planning in that case were locating a suitable successor guardian and issuing new letters

13.

of guardianship, rendering consideration of reunification services unnecessary. (*S.H.,*
*supra,* 197 Cal.App.4th at p. 1553.)

However, the court in *S.H.*, after lengthy analysis, concluded 366.3 applies to any
change in guardianship, whether there is a petition to terminate a guardianship or to
modify a prior guardianship order by appointing a successor guardian, and rejected the
suggestion by the juvenile court that the mother's request pursuant to section 366.3 to
consider reunification services was inappropriate because, even though there was a
change in guardianship, the permanent plan remained the same. (*S.H., supra,*
197 Cal.App.4th at p. 1554.)

As summarized in *S.H.*, the nature and purpose of section 366.3 was that the
juvenile court must provide all parents whose parental rights remain intact both notice
that the legal guardianship has been revoked or terminated and the opportunity "to
participate in the new permanency planning hearing." (§ 366.3, subd. (b)(3).) It found
section 366.3 equally clear that the juvenile court may consider the parents as custodians,
however "the child shall not be returned to the parent or parents unless they prove, by a
preponderance of the evidence, that reunification is the best alternative for the child."
(§ 366.3, subd. (b)(3).) (*S.H., supra,* 197 Cal.App.4th at p. 1555; see also *In re Z.C.*
(2009) 178 Cal.App.4th 1271, 1283 [under section 366.3, subd. (b), "if the parental rights
have not been terminated, a parent must receive notice of the hearings and may present
evidence that reunification services are in the child's best interests"].)

*S.H.* involved the question of whether the juvenile court should have reopened the
issue of reunification services when one guardianship was terminated and another
instituted, and the court held that section 366.3 applies to any change in guardianship,
whether there is a petition to terminate a guardianship or to modify a prior guardianship
order by appointing a successor guardian. (*S.H., supra,* 197 Cal.App.4th at p. 1554.) We
will assume, for purposes of the argument here, that section 366.3 also applies to the

situation at hand, where there is a petition to terminate a guardianship in favor of adoption.

Although the court in *S.H.* found that the juvenile court erred by reading section 366.3 in such a way as to preclude mother from reopening the issue of reunification services, it still addressed the issue of whether the error was prejudicial and found, in that instance, that it was not. " 'The standard of review where a parent is deprived of a due process right is whether the error was harmless beyond a reasonable doubt. [Citation.]' (*In re Thomas R.* [(2006)] 145 Cal.App.4th [726], 734)." (*M.T. v. Superior Court* (2009) 178 Cal.App.4th 1170, 1181–1182.) As such, the juvenile court's order must stand so long as we can conclude that "[mother] suffered no prejudice either because it would have been an abuse of discretion to rule in [her] favor [citation] or because it is not reasonably probable that [she] would have obtained a more favorable result had the court exercised its discretion." (*S.T. v. Superior Court* (2009) 177 Cal.App.4th 1009, 1016; see also *M.T. v. Superior Court, supra,* 178 Cal.App.4th at pp. 1181–1182.)

After reviewing the record, the court in *S.H.* concluded the mother suffered no prejudice from the juvenile court's refusal to consider granting her reunification services, as the department's report chronicled mother's failure to participate in any services despite being told that she needed to for any consideration of reunification, and she remained consumed by anger, made threats to the minor's caregiver, and was not supportive of the minor's placement despite the negative impact her conduct had on the relationship with the minor. She had also been bypassed for services earlier due to her role in the death of another child through abuse or neglect and severe physical abuse of the minor's half-sibling. Furthermore, she made no effort to treat the problems that led to removal of the minor's half-siblings. "Under these circumstances, there is no reasonable probability that mother would have obtained a more favorable result had the juvenile

15.

court reopened the reunification services issue before appointing the successor guardians." (*S.H., supra,* 197 Cal.App.4th at p. 1557.)

Here, too, we find no prejudice in failing to reopen the issue of reunification services. Mother had not seen the children in two years and then only visited twice prior to the guardians' filing of the section 388 petition. While the agency's addendum report written March 27, 2024, for the contested hearing requested that mother receive reunification services, the report also chronicled very little effort on mother's part to be a part of the children's lives. Mother only began visiting the children again just before the section 388 petition was filed by the guardians. The report noted J.S.'s reluctance to visit with mother and his increased negative behavior since visits resumed. Mother only completed a mental health assessment on March 21, 2024, less than a month before the April 17, 2024, hearing. She also began participating in parenting classes less than a month prior on March 26, 2024. While mother had completed a domestic violence batterer's intervention program, it was one required for a previous domestic violence charge. In the April 17, 2024, addendum report, the agency reported that J.S. wanted the guardians to adopt him but was open to visits with mother.

As in *S.H.*, "Under these circumstances, there is no reasonable probability that mother would have obtained a more favorable result had the juvenile court reopened the reunification services issue" prior to setting the section 366.26 hearing. (*S.H., supra,* 197 Cal.App.4th at p. 1557.)

We affirm the juvenile court's setting of the section 366.26 hearing. Nothing prevents mother from filing a section 388 petition requesting custody or reunification services based on changed circumstances.

## DISPOSITION

The petition for extraordinary writ is denied. This court's opinion is final forthwith as to this court pursuant to rule 8.490(b)(2)(A).

16.