Filed 5/13/14  In re Guillermo D. CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| In re GUILLERMO D., et al., Persons Coming Under the Juvenile Court Law. | B252605 <br><br> (Los Angeles County Super. Ct. No. CK95523) |
| Y.N., <br><br>        Appellant, <br><br> v. <br><br> LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, <br><br>        Respondent. | |

APPEAL from an order of the Superior Court of Los Angeles County, Carlos E. Vasquez, Judge.  Affirmed.

Linda Rehm, under appointment by the Court of Appeal, for Appellant.

John F. Krattli, County Counsel, James M. Owens, Assistant County Counsel and Kristine P. Miles, Deputy County Counsel for Respondent.

In this dependency proceeding, the juvenile court ordered that the visits between Y.N. (mother) and her three small children be monitored. Mother appeals the order as an abuse of discretion. We see no error, and so affirm the order.

FACTUAL AND PROCEDURAL BACKGROUND

This family came to the attention of the Department of Children and Family Services (DCFS) in September 2012 after mother took nine-month old Angie P. to the emergency room for treatment when she noticed a bump on the side of the child's head. Angie had sustained a skull fracture and a possible broken rib. Mother claimed the child fell from the bed a month earlier, but gave inconsistent accounts of the incident. Angie's attending physician stated that mother's explanation of how Angie sustained her injuries was not consistent with the child's injuries.

DCFS took Angie and her siblings, Guillermo D. (born 2007) and Daniela D. (born 2009) into protective custody, and filed a Welfare and Institutions Code[1] section 300 petition under subdivisions (a), (b), (e), and (j). The petition alleged, among other things, that Angie had suffered a left parietal skull fracture, intracranial bleeding to the brain, and a fracture of her left anterior 7th rib; mother's explanation was inconsistent with the child's injuries; the injuries were consistent with non-accidental trauma; such injuries would ordinarily not occur except as the result of deliberate, unreasonable, or neglectful acts by the child's mother; mother failed to obtain timely necessary medical treatment for Angie; and the foregoing acts placed the children at risk of harm.

At the detention hearing on September 18, 2012, the court found a prima facie case for detaining the children. The court ordered monitored visits for mother no less than four hours per week. The court also ordered monitored visits for Angie's father, Angel P. The children were placed in the foster home of Consuelo H.

In the report prepared for the jurisdiction/disposition hearing, DCFS recommended that the children remain in suitable placement; it reasoned that it would be detrimental for

---

[1] Further statutory references are to this code.

2

the children to reside with mother given the nature of Angie's injuries and the children's young ages. DCFS also recommended that mother and Angel P. receive reunification services, and that visitation remain monitored with discretion given to DCFS to liberalize visits.

In a Last Minute Information report filed October 19, 2012, DCFS reported on the social worker's recent visit to the children's foster home. Daniela and Guillermo disclosed to both the social worker and the foster mother that mother would hit them with a hanger and that Angel P. would hit them with a belt. The foster mother remarked that when the children were first placed with her, they had bruises on their backs that appeared to be from a belt. DCFS filed a first amended petition to include physical abuse allegations and mother's failure to provide adequate supervision of Angie. The court ordered the children to remain detained, found Angel P. to be Angie's presumed father, ordered DCFS to submit a completed due diligence for Guillermo D., and continued the hearing to November 27, 2012.

At a trial setting hearing on January 11, 2013, Guillermo D. was present and found by the court to be Guillermo and Daniela's presumed father. The court ordered that he be provided monitored visits.

The adjudication hearing was set for May 1, 2013. A Last Minute Information filed April 29, 2013 indicated that the parents had consistently visited the children, who enjoyed the visits. Mother was appropriate with the children, and the foster mother had no concerns regarding any of the parents' behavior during the visits. DCFS recommended continued family reunification services for mother, with continued monitored visits for mother and Angel P. DCFS also recommended that Guillermo and Daniela be released to Guillermo D., a non-offending parent who had expressed an interest in caring for the children.

At the May 1 adjudication, mother pled no contest to the allegations in the amended section 300 petition. The court sustained the petition under subdivision (b), specifically based on Angie's suffering from a left parietal skull fracture due to the

3

mother's insufficient supervision and mother and Angel P.'s inappropriate, excessive physical discipline of Guillermo and Daniela by the use of a hanger and a belt.

Guillermo and Daniela were ordered to be placed with their father, who was to be provided with family maintenance services. Angie continued in her foster placement. Reunification services were ordered for mother, as were unmonitored visits for mother with the children in a public setting for no more than two hours at a time, with DCFS given discretion to liberalize.

In the Status Review Report for the October 30, 2013 hearing, the social worker reported that Guillermo and Daniela continued to reside with their father, who complied with court-ordered programs but struggled to address Guillermo's defiant behavior. Daniela also had a difficult adjustment, but was doing well in Guillermo D.'s care. Angie was doing well in her foster home and was very attached to her foster parents. Mother was compliant with her case plan, attending a parenting program and individual therapy, and consistently visiting the children. Mother's therapist submitted a progress report stating that mother was doing everything that was required in order to get her children back. Mother had benefited from individual therapy and learned parent-child communication skills in a manner that fostered better understanding of the children's behaviors and contributed to their well-being. She took responsibility for not having been able to protect Angie, and dedicated herself to making the best of all of her reunification service programs.

However, the social worker noted that on October 1, DCFS received a referral alleging physical abuse towards Daniela, who had a one-inch laceration above her right eye and three one-inch abrasions on her neck. Daniela and Guillermo told the social worker and the police that mother had grabbed and scratched Daniela on the neck because she was misbehaving during a September 28, 2013 visit. The children gave different accounts of the injuries. Mother had sought assistance from her attorney, her parenting instructor, and Angie's foster mother to bring the matter to DCFS's attention. In a Team Decision Meeting convened after this incident, the parties decided that

4

mother's visits would revert to monitored until the October 30 hearing, and that Guillermo and Daniela would remain with their father.

On October 30, 2013, the court held the hearing under section 463 for Guillermo and Daniela, and under section 366.21, subdivision (e) for Angie. DCFS recommended that mother continue to receive reunification services and that her visits be monitored. It also recommended that Angie be returned to her father Angel P., and that family maintenance services be provided to both fathers.

The court ordered that Angie be placed in home-of-parent father with family maintenance services. The court ordered "family enhancement" services for mother and continued jurisdiction over the case. As to Guillermo and Daniela, the court also found that continued jurisdiction was necessary, as the conditions justifying jurisdiction continued and Guillermo D. needed to complete his case plan. The court ordered continued reunification services for mother. Although mother requested that her visits remain unmonitored, the court ordered monitored visits.

Mother timely filed a notice of appeal, challenging the court's visitation order.


DISCUSSION

Mother's sole challenge to the juvenile court orders is the proviso that her visits with the children be monitored. A visitation order is reviewed for abuse of discretion. (*Bridget A. v. Superior Court* (2007) 148 Cal.App.4th 285, 300.) A juvenile court is afforded great discretion in deciding issues relating to parent-child visitation, and a reviewing court will not disturb such discretion on appeal unless the juvenile court has exceeded the bounds of reason. (*In re S.H.* (2011) 197 Cal.App.4th 1542, 1557-1558.) A court abuses its discretion when it makes a determination that is "'arbitrary, capricious, or patently absurd.'" (*In re Mark V.* (1986) 177 Cal.App.3d 754, 759, quoting *In re Geoffrey G.* (1979) 98 Cal.App.3d 412, 421.) "When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court." (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318-319.)

Here, the juvenile court took jurisdiction of the three minors due to mother's failure to adequately supervise her infant, and her inappropriate physical discipline of the two older children. Based on her progress during the reunification period, mother's visits had been changed from monitored to unmonitored. However, five months after mother commenced unmonitored visits, Daniela received injuries which she reported were inflicted by mother grabbing and scratching her on the neck because she was misbehaving during a visit. Daniela's brother, Guillermo, confirmed that mother caused Daniela's injuries.

The court's decision to proceed cautiously and order monitored visits did not exceed the bounds of reason. Mother's history of inappropriate physical discipline of her young children, coupled with her recent conduct in grabbing and scratching Daniela for misbehaving during an unmonitored visit, fully support the juvenile court's order that mother's visits be monitored.

## DISPOSITION

The order is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS


MINK, J.[*]


We concur:


MOSK, ACTING P.J.                    KRIEGLER, J.

---

[*]     Retired Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.