Filed 7/29/14  In re J.W. CA1/5

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

### IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

### FIRST APPELLATE DISTRICT

### DIVISION FIVE

In re J.W., a Person Coming Under the
Juvenile Court Law.

| | |
|---|---|
| **CONTRA COSTA COUNTY CHILDREN AND FAMILY SERVICES,** | **A140783** |
| **Plaintiff and Respondent,** | **(Contra Costa County Super. Ct. No. J1200776)** |
| v. | |
| **T.M. et al.,** | |
| **Defendants and Appellants.** | |

_____/

T.M. (mother) and Joseph W. (father) appeal from the juvenile court's termination of their parental rights as to J.W. (daughter) following a Welfare and Institutions Code section 366.26[1] hearing (.26 hearing).  Mother contends her "visitation was unfairly ma[int]ained at a minimal level."  Father claims the court erred by failing to apply the beneficial parent-child relationship exception to termination of parental rights (§ 366.26, subd. (c)(1)(B)(i))) and there was insufficient evidence daughter was adoptable.  Mother and father join each other's briefs.

We affirm.

---

[1]     Unless noted, all further statutory references are to the Welfare and Institutions Code.

FACTUAL AND PROCEDURAL BACKGROUND

We provide a brief procedural history and recite only those facts relevant to the issues raised on appeal.

*Detention, Jurisdiction, and Disposition*

Shortly after daughter was born in 2012, the Contra Costa County Children and Family Services Bureau (Bureau) filed, and later amended, a petition alleging daughter came within section 300, subdivision (b) because: (1) mother and father "suffer[ed] from chronic mental health issues" limiting their ability to parent daughter safely; (2) mother and father "engaged in ongoing domestic violence" placing daughter at risk of harm; and (3) mother had "a chronic substance abuse problem" interfering with her ability to parent daughter safely.[2] The court detained daughter, adjudged her a dependent of the court (§ 300, subd. (b)), and determined by clear and convincing evidence returning her to parental care would cause substantial danger to her physical health. The court determined father was a presumed father. The court ordered reunification services for mother and father and monitored visitation twice a month. Neither parent objected to the visitation order. Daughter was placed with paternal relatives.

*Status Review and Section 388 Hearings*

At the conclusion of the six-month review hearing, the court provided additional reunification services for mother and father. The court declined mother's requests for "more visits" and for unsupervised visits, as well as mother and father's request for "a little bit of leeway rather than just two visits for one hour a month." At the conclusion of the 12-month review hearing, the court terminated father's reunification services and, at mother's request, authorized the Bureau to offer mother unsupervised visitation. Shortly thereafter, the Bureau moved, pursuant to section 388, to terminate reunification services for mother and set a .26 hearing because mother failed "to produce a clean [drug] test" in violation of a court order. Following a hearing, the court granted the motion, terminated mother's reunification services, set a .26 hearing, and reduced mother's supervised

---

[2] Mother had nine other children, none of whom were in her care, and 14 substantiated child welfare referrals for these children.

2

visitation to one hour per month. Neither mother nor father petitioned for writ review of the order reducing mother's visitation and setting the .26 hearing.

*The .26 hearing*

In its .26 hearing report, the Bureau recommended terminating parental rights and finding "adoption to be the appropriate permanent plan for [daughter]." The Bureau described daughter as an adorable, happy, and adoptable child "placed with relatives who are committed to adopting her." According to the Bureau, daughter had "formed a strong attachment to her prospective adoptive family . . . [She] looks to her prospective adoptive parents for emotional support, nurturing, and love. . . . [¶] [Daughter] and her birth parents have not established a connected relationship that would outweigh the benefit of legal permanence. Severing parental rights in order for [daughter] to be adopted will not interfere in an existing parent/child relationship." The Bureau also reported daughter's paternal relatives wished to adopt daughter and were not interested in guardianship.

The Bureau noted mother "interact[ed] appropriately" during some visits with daughter but her "mental instability" was apparent and she exhibited "concerning" and "erratic" behavior" during other visits. During one visit, mother accused the "social worker of being the devil and wanting to kill [daughter]." Mother also "accused other staff members of wanting to kill her. [Mother] began convulsing and fell to the floor. She was subsequently placed on section 5150 hold." The Bureau reported father had consistently visited daughter and had "interacted appropriately with [her] and demonstrated love and concern for her." Father, however "ha[d] acknowledged on more than one occasion that it [was] in [daughter]'s best interest to remain with the paternal relatives."

Mother and father testified at the .26 hearing. They opposed termination of parental rights and urged the court to order a permanent plan of legal guardianship with daughter's caretakers. At the conclusion of the .26 hearing, the court terminated parental rights and ordered adoption as daughter's permanent plan. The court determined daughter was adoptable and none of the statutory exceptions to adoption applied.

3

DISCUSSION

I.

*Mother's Visitation Claim Fails*

Mother contends the order terminating her parental rights must be reversed because the court "failed to ensure the opportunity for frequent visitation," which she claims precluded her from developing "a significant parent-child relationship[.]" According to mother, "[m]ore visits would have presented an opportunity" for her to "establish a bond prior to termination of parental rights." Mother forfeited this claim. She did not object to the visitation order at the dispositional hearing; she did not seek modification of any of the visitation orders by filing a section 388 petition; and she did not petition for writ review of the order reducing her visitation and setting a .26 hearing. (*In re Valerie A.* (2007) 152 Cal.App.4th 987, 1001; *In re Kevin S.* (1996) 41 Cal.App.4th 882, 885-887.)

Even if mother had preserved her argument regarding visitation, we would reject it on the merits. "[D]ependency law affords the juvenile court great discretion in deciding issues relating to parent-child visitation, which discretion we will not disturb on appeal unless the juvenile court has exceeded the bounds of reason." (*In re S.H.* (2011) 197 Cal.App.4th 1542, 1557-1558.) Here, the court acted well within its discretion by ordering two supervised visits with daughter per month, and then by reducing visitation to once a month. Mother had several "dirty" drug tests throughout the dependency. She was unable to collaborate with daughter's caregivers, unable to control her anger, and refused to take medication prescribed for her mental health issues. Her behavior during visits was inappropriate, erratic, and dangerous. The court's visitation orders "properly balanced" mother's rights "with the best interests of the child" and were not an abuse of discretion. (*In re R.R.* (2010) 187 Cal.App.4th 1264, 1284.) Additionally, we conclude mother has not established the court impermissibly delegated judicial authority to the Bureau to determine whether visitation should occur, particularly in light of her admission that the "court may not have impermissibly delegated . . . authority to [the Bureau] to control visitation."

4

## II.

### *The Beneficial Parent-Child Relationship Exception Does Not Apply*

Father contends the court erred by declining to apply the beneficial parent-child relationship exception to termination of parental rights (§ 366.26, subd. (c)(1)(B)(i)). To establish the applicability of the beneficial relationship exception, father must demonstrate he "maintained regular visitation and contact" with daughter and daughter "would benefit from continuing the relationship" with him. (§ 366.26, subd. (c)(1)(B)(i).)

The beneficial relationship exception "is entirely inapplicable under the facts of this case" because father cannot establish daughter would benefit from continuing the parental relationship. (*In re Erik P.* (2002) 104 Cal.App.4th 395, 403; see also *In re G.B.* (July 9, 2014, A140107, A140624) ___ Cal.Rptr.3d ___ [2014 WL 3350689].) Father admits his argument is "problematic."[3] He is correct. The beneficial relationship exception is "difficult to make in the situation, such as the one here, where" father has not "advanced beyond supervised visitation." (*In re Casey D.* (1999) 70 Cal.App.4th 38, 51 (*Casey D.*).) Here, substantial evidence demonstrated mother and father had not established a connected relationship with daughter that would outweigh the benefit of legal permanence.

Father's claim that he had a "developing" relationship with daughter does not alter our conclusion. To establish the applicability of the beneficial relationship exception, father was required to show more than an emerging relationship with daughter. (See *Casey D., supra,* 70 Cal.App.4th at p. 52, fn. 4.) He needed to demonstrate his relationship with daughter promoted her well-being "'to such a degree that it outweighs the well-being [she] would gain in a permanent home with new, adoptive parents.' [Citation.]" (*Ibid.,* quoting *In re Lorenzo C.* (1997) 54 Cal.App.4th 1330, 1342.) Father failed to do so. The beneficial relationship exception does not apply here. (*In re C.F.* (2011) 193 Cal.App.4th 549, 555-556; *In re K.P.* (2012) 203 Cal.App.4th 614, 621-622.)

---

[3] Father concedes he "is not in a position to care for [ ] daughter full time" and that daughter has been in the care of others since birth.

III.

*Substantial Evidence Supports the Adoptability Finding*

Father challenges the court's finding that daughter was likely to be adopted. "A finding of adoptability requires 'clear and convincing evidence of the likelihood that adoption will be realized within a reasonable time.' [Citation.] The question of adoptability usually focuses on whether the child's age, physical condition and emotional health make it difficult to find a person willing to adopt that child. [Citation.]" (*In re B.D.* (2008) 159 Cal.App.4th 1218, 1231.) "On review, we determine whether the record contains substantial evidence from which the juvenile court could find clear and convincing evidence the child was likely to be adopted within a reasonable time. [Citations.]" (*In re Michael G.* (2012) 203 Cal.App.4th 580, 589.) "The substantial evidence standard of review is generally considered the most difficult standard of review to meet, as it should be, because it is not the function of the reviewing court to determine the facts. [Citation.]" (*Id.* at p. 589.)

Here, substantial evidence supports the court's adoptability finding. (*In re Lukas B.* (2000) 79 Cal.App.4th 1145, 1153.) The undisputed evidence established daughter was "an adoptable child . . . placed with relatives who [were] committed to adopting her." The evidence also demonstrated daughter had "formed a strong attachment to her prospective adoptive family" and looked "to her prospective adoptive parents for emotional support, nurturing, and love." We are not persuaded by father's claim that the court should have selected guardianship instead of adoption. Contrary to father's argument — and in complete contrast to the cases upon which father relies — the undisputed evidence demonstrated daughter's caregivers wanted to adopt her and were not interested in guardianship.

6

## DISPOSITION

The judgment is affirmed.

_____
Jones, P.J.

We concur:

_____
Needham, J.

_____
Bruiniers, J.