Filed 6/6/22 In re Z.O. CA3

NOT TO BE PUBLISHED

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| In re Z.O., a Person Coming Under the Juvenile Court Law. | C094660 |
| SAN JOAQUIN COUNTY HUMAN SERVICES AGENCY, | (Super. Ct. No. STK-JD-DP-2020-0000134) |
| Plaintiff and Respondent, | |
| v. | |
| K.O., | |
| Defendant and Appellant. | |

K.O. (mother), mother of the minor Z.O., appeals from the juvenile court's order during a contested dependent review hearing (Welf. & Inst. Code, § 366.3)[1] reducing the frequency of her visitation with the minor. She contends the juvenile court abused its discretion. We shall affirm the order.

---

[1] Further undesignated statutory references are to the Welfare and Institutions Code.

1

# BACKGROUND

## A. Initial Dependency Proceedings

On May 8, 2020, the San Joaquin County Human Services Agency (Agency) received a request for immediate response from the Tracy Police Department. The officer noted the filthy living conditions within the home and stated that Z.O. and his younger sister, S.O., contacted law enforcement because the father, G.O. (father), had been drinking and threatened to burn down the house with the minors inside. Father also threatened to "skin the children and eat them." The officer reported that father had a severe alcohol problem and mental health issues, and mother had medical issues and could not properly care for the minors. The officer reported that mother and father constantly argued and fought, which resulted in items being thrown and broken in the home. The officer reported that father also body shamed Z.O. and made sexually suggestive comments to S.O.

The social worker's report showed that mother and father had a history of contact with the Agency, which included an investigation that was closed one month prior to this incident. The social worker noted the unsanitary living conditions of the home and interviewed Z.O. The minor stated that he was attending school through distance learning, but the chaotic home environment prevented him from concentrating in class. The minor stated that mother and father had physical fights every day. The minor stated that he contacted law enforcement because father was drunk and hitting mother while threatening to burn the house down. The minor stated that during a fight two days prior, father choked him until he began coughing. The minor also described incidents in which father slapped him in the face and grabbed his arm leaving marks.

The minor was the subject of a dependency petition filed on May 12, 2020. The petition alleged that the minor (then 13 years old) and the minor's sister S.O. (then 11 years old), who is not part of this appeal, came within the provision of section 300,

2

subdivision (b)(1) for failure to protect and section 300, subdivision (c) for serious emotional damage.

Mother admitted to the social worker that both she and father used methamphetamine. She denied that the use of methamphetamine or daily use of alcohol was a problem, and she stated that father did not hit her but did slap her. She stated that she and father were "trying to work on things" and was aware of the issues in the home, but she told the minors it was not their father's fault because " 'he was traumatized since I almost died.' " The social worker also interviewed father, who stated that he and mother had recently resumed using methamphetamine after stopping for years. Father admitted to the domestic violence but denied threatening the family and choking Z.O.

At the May 13, 2020, detention hearing, the juvenile court ordered the minors detained and supervised visits between mother, father, and the minors.

## B. *Jurisdiction and Disposition*

On June 17, 2020, the juvenile court granted the Agency discretion to separate mother's and father's visits with the minors. On June 30, 2020, the court authorized placement of Z.O. in a group home. Mother and father did not appear at the July 30, 2020, jurisdictional hearing. The juvenile court proceeded in their absence and found the allegations in the petition true and took jurisdiction of the minors. On August 13, 2020, the court ordered mother and father to participate in drug court.

The Agency's disposition report, filed August 31, 2020, showed the reunification case plan established for mother consisted of personal counseling, substance abuse treatment, compliance with court orders, and parenting education. The reunification case plan for father consisted of completion of a psychological evaluation, substance abuse treatment, compliance with court orders, a 52-week domestic violence program, and parenting education. Father failed to engage in services. Mother failed to participate in parenting education and substance abuse treatment. She claimed she could not participate in substance abuse treatment because of her numerous health issues but did

3

not provide confirming documentation from her doctor as directed by the court. Mother had only recently begun individual counseling and had developed minimal insight into her needs. Mother acknowledged her ongoing struggle with methamphetamine and stated that it was used to assist with her pain. Mother did not comprehend the impact her relationship with father had on the minors and wanted to remain in the relationship. The report showed that the domestic violence continued as demonstrated by father's arrest following a visit with Z.O. on August 24, 2020. Father became aggressive and violent toward visitation staff and vandalized the visitation center. As a result, father's visits were suspended and visits could no longer be held at the center. After that incident, a passerby witnessed father hitting mother while driving home from the visit, but mother continued to defend father and minimized his behavior.

At the September 17, 2020, dispositional hearing, mother and father submitted on the Agency's report. The court ordered the minors to remain in placement and mother and father to submit to psychological evaluations to tailor services.

## C. Status Review

The Agency's status review report, filed March 2, 2020, showed that the minors remained in separate foster care placements, and mother and father continued to maintain their relationship and reside together. Mother completed parenting education and 20 sessions of individual counseling. Her therapist reported that mother acknowledged the circumstances which led to the removal of the minors but needed additional counseling to understand the impact of domestic violence on the minors and learn to set healthy boundaries. However, mother was terminated from drug court and missed her psychological evaluation appointment. Father also was terminated from drug court and continued to exhibit aggressive behaviors.

The minor maintained visits with mother and father once a week for two hours. The minor's sister, S.O., stated that she had no faith in her parents' ability to provide a safe home environment and did not want to return to their care or attend visits. The

4

report showed that the minors were exposed to a great deal of domestic violence, neglect, and dysfunction in the home and exhibited behaviors which were indicative of the trauma sustained from that exposure. Father was arrested and charged for physically assaulting mother, but mother remained in the relationship. Due to the age of the minors and the ongoing visits with Z.O., the Agency requested to continue services despite mother's and father's minimal engagement.

On March 3, 2021, at the status review hearing, the minor informed the juvenile court that he felt safe in his placement and that visits with mother and father were "good." The court ordered the minor and S.O. to remain in placement and continued services to mother and father.

## D. Dependent Review Hearing

The Agency's status review report, filed July 1, 2021, showed that mother and father had not made any significant progress in their reunification services. During visits with Z.O., father demonstrated aggressive and threatening behaviors toward mother and the staff. Z.O. told his caregiver that he noticed mother and father had a bottle of alcohol in their car. The minor also disclosed that father threatened physical harm to staff during visits. The report showed that mother and father had not taken responsibility for their actions and the resulting trauma sustained by the minors. The report showed that mother and father had not made any efforts to address the abusive dynamic of their relationship or demonstrate any behavioral changes that would allow for a safe environment for the minors. Accordingly, the Agency recommended terminating mother's and father's reunification services with a planned permanent living arrangement ordered for Z.O. and a permanent plan of adoption for S.O.

At the August 10, 2021, contested dependent review hearing, the juvenile court received the Agency's July 2021 review report into evidence. There was no testimony, but the court heard argument from the Agency requesting to terminate reunification services as to both parents and that the permanent plan for Z.O. remained a permanent

5

living arrangement. The Agency argued that the dependency would reach 18 months in November 2021, and in order for the court to continue services, it would have to find a substantial likelihood that mother and father would reunify with the minors in that time. As to father, the Agency argued that there was no likelihood he would be in a position to reunify with the minor with additional time. As to mother, the Agency argued that, while she engaged in portions of her case plan, she had not engaged in substance abuse treatment and continued to minimize her drug use, which prevented her from benefitting from the individual counseling she received. The Agency argued that, after 30 counseling sessions, mother continued to minimize the impact that domestic violence and the parental behaviors had on the minors. In the event the court terminated reunification services, the Agency also requested that the court find that visits would be detrimental and suspend them. In the alternative, the Agency requested that the court reduce the number of visits due to concerns that visits would destabilize Z.O. in placement. The minors' counsel agreed with the Agency. Mother's counsel opposed the Agency's arguments and emphasized that mother completed the counseling component of her case plan and was willing to participate in substance abuse treatment. Mother's counsel stated that Z.O. wanted to reunify.

The juvenile court noted that mother and father both participated in some of the components of the reunification case plans. The court observed that mother did not follow through with the psychological evaluation to assist with tailoring her services. The court further observed that neither mother nor father had addressed substance abuse, which was at the core of the issues in the home. Accordingly, the court terminated mother's and father's reunification services.

The court then heard from the parties on the visitation issue as to Z.O. The minor's counsel stated that the minor wanted to maintain visits once a week. The minor's counsel agreed that the visits were disruptive to the minor's placement and stated that visits should be less than once a week if the plan for the minor was long-term foster care

6

to prevent the minor from destabilizing in placement. The Agency advised the court that the minor had been in the same foster care placement since October 2020 and the foster parents indicated a willingness to take guardianship of the minor in July 2021. The Agency stated that since mother and father learned that the recommendation was to terminate services, the minor's behaviors had escalated and he expressed a desire to go home. The Agency stated that the minor's placement was in jeopardy due to the behaviors during visits and the resulting effect on the minor's own behaviors. The court was advised that the minor was transitioning to a new mental health provider for counseling, which was believed necessary as the minor continually changed his mind about visiting with his parents.

Father's counsel stated his disbelief that the visits with mother and father were responsible for the minor's misbehavior in the foster home. Mother's counsel agreed that there was no detriment to the minor in regard to visits with mother and it was speculative to conclude the visits were the cause of the minor's behavior issues. The minor's counsel pointed out that mother had a history of substance abuse and engaging in domestic violence with father. The minor's counsel stated that mother had not acknowledged the impact that behavior had on the minors and the behavior had not stopped. The minor's counsel noted that there had been issues during the visits which caused the minor and S.O. not to want to attend visits. The minor's counsel believed that weekly visits were too frequent and did not allow Z.O.'s own behavioral issues to stabilize, but instead, gave the minor false hope that mother and father were going to do what was necessary to reunify when nothing had changed after a year of services.

The juvenile court observed that the minor needed to be stable in his placement and observed he was "going back and forth" on what kind of relationship he wanted to have with his parents. The court acknowledged that the minor wanted to return home but stated that it was not possible at that time. The court stated that the minor needed an environment where he could discuss and work through the issues associated with

returning to mother and father in an effort to "determine what that relationship with his parents is going to be as we go forward." The court expressed concern regarding mother's and father's history and problems that arose during visits. The court ordered that supervised visits be reduced to once every other week until counseling for the minor was in place to get him stabilized and gain control of the situation. The court ordered that mother and father be tested and "clean and sober for all visits" and that the visits would stop and be changed to no visits if they engaged in arguments, confrontations, or disruptions. The court stated that if the nature of the visits improved and the minor's therapist agreed, then the frequency of visits could be increased. The court also wanted input from any therapist mother and father may be seeing about their progress.

Mother filed a timely notice of her appeal.

## DISCUSSION

Mother contends that the juvenile court abused its discretion in reducing her visitation with the minor from once a week to once every other week because there was no evidence that mother's weekly visits were having a detrimental effect upon him or his placement. We disagree.

"[D]ependency law affords the juvenile court great discretion in deciding issues relating to parent-child visitation." (*In re S.H.* (2011) 197 Cal.App.4th 1542, 1557.) We review a juvenile court's visitation order solely for abuse of discretion. (*In re Emmanuel R.* (2001) 94 Cal.App.4th 452, 456.) The standard warrants "a very high degree of deference" to the juvenile court's decision. (*In re J.N.* (2006) 138 Cal.App.4th 450, 459.) The appropriate test is whether the court " ' "exceeded the bounds of reason. When two or more inferences can reasonably be deduced from the facts, the reviewing court has no authority to substitute its decision for that of the trial court." ' " (*In re Stephanie M.* (1994) 7 Cal.4th 295, 318-319.) When reunification has terminated and the permanent plan of legal guardianship or long-term foster care implemented, the court makes a visitation order unless it "finds by a preponderance of the evidence that the visitation

8

would be detrimental to the physical or emotional well-being of the child." (§ 366.26, subd. (c)(4)(C); *In re S.H.*, at pp. 1558-1559.)

Here, the juvenile court terminated mother's and father's reunification services after finding that neither parent demonstrated a commitment to completing the services necessary for alleviating the reasons for the removal of the minor. While the record shows that father was the key disruptor during visits, it also shows that mother had not demonstrated an ability to provide a safe and protective environment for the minors, and, on at least one occasion, she and father brought a bottle of alcohol in their car during a visit with the minor. The record also shows that mother was not making any additional progress in addressing the issues which led to the minor's removal. Despite the domestic violence, mother remained in a relationship with father and lacked any understanding as to how that relationship negatively impacted the minors. In spite of witnessing the aggressive and threatening behavior by father during visits, mother was in denial and remained supportive of father to the detriment of the minor. The record demonstrates that witnessing and being exposed to the domestic violence in the home and aggressive behaviors during visits furthered the trauma to the minor and resulted in an increase of the minor's behavioral issues.

By the time of the contested dependent review hearing in August 2021, the minor had been in dependency for over a year and was experiencing feelings of instability and uncertainty about whether he wanted to visit with his parents. As a result, the minor had behavioral issues jeopardizing his placement. As the California Supreme Court has recognized, children have a constitutional and statutory interest in stability. (*In re Jasmon O.* (1994) 8 Cal.4th 398, 421.) "[A]fter a child has spent a substantial period in foster care and attempts at reunification have proved fruitless, the child's interest in stability outweighs the parent's interest in asserting the right to the . . . companionship of the child. [Citation.]" (*Id.* at pp. 419-420.) "[T]he law focuses more on the interests of the child at this late stage of the proceedings." (*Id.* at p. 426.)

9

The record supports that the court's decision to reduce the frequency of mother's visits was to allow the minor's own behaviors to stabilize. The court also supported increasing frequency of visits if the nature of the visits improved and the minor's therapist agreed that the frequency of visits could be increased. The record indicates that visits were detrimental to the minor's emotional well-being. More importantly, until mother made progress toward alleviating the reasons for the minor's removal, the minor remained at risk of continued detriment because none of the behavior demonstrated by mother or father had changed. We cannot conclude that the court's decision exceeded the bounds of reason. (See *In re Stephanie M., supra*, 7 Cal.4th at pp. 318-319.) Accordingly, the juvenile court did not abuse its discretion in reducing the frequency of mother's visitation with minor.

## DISPOSITION

The juvenile court's order is affirmed.

/s/
HOCH, Acting P. J.

We concur:

/s/
RENNER, J.

/s/
KRAUSE, J.

10