Filed 3/30/23  In re M.S. CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| In re M.S., a Person Coming Under the Juvenile Court Law. | B315043 |
| | (Los Angeles County Super. Ct. No. CK98630A) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, Plaintiff and Respondent, v. N.S., Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County, Stephanie M. Davis, Judge Pro Tempore.  Conditionally reversed and remanded with directions.

Jill Smith, under appointment by the Court of Appeal, for Defendant and Appellant.

Tarkian & Associates and Arezoo Pichvai for Plaintiff and Respondent.

In dependency proceedings triggered by domestic violence between N.S. (Father) and S.E. (Mother), the juvenile court placed their daughter M.S. (Minor) under the legal guardianship of maternal relatives and ordered monitored visitation for Father. We are asked to decide whether the juvenile court's decision not to grant Father *un*monitored visitation was an abuse of its discretion. We also consider whether the juvenile court and the Los Angeles County Department of Children and Family Services (the Department) complied with their obligations under the Indian Child Welfare Act (ICWA) and related California law.

## I. BACKGROUND

Father and Mother have one child, Minor, born in July 2012. In April 2013, the juvenile court asserted dependency jurisdiction over Minor as a result of an incident in which Mother bit Father and the couple fell to the floor "wrestl[ing]" over a cell phone. Minor remained placed with her parents during the dependency proceedings, and the juvenile court terminated jurisdiction in May 2014.

In February 2017, Mother was arrested for punching and biting Father while he was driving a car with Minor inside. Father told police he and Mother were arguing about "relationship issues" and he pushed her away as she punched and spit at him. Mother told police Father punched her in the face while he was driving and she was "extremely scared of [Father] because [he] beat[ ] her every night." Minor, then four years old, told police her parents had been arguing "[v]ery loud" and Mother hit Father "[a] lot."

In April 2017, the Department filed a dependency petition alleging Minor was at substantial risk of serious physical harm

based on Mother and Father's history of domestic violence in Minor's presence.[1]  The petition alleged both that Mother struck and bit Father and that Father "pushed [Mother's] face."  It further alleged that, "[o]n prior occasions, [Father] struck [Mother]."

The juvenile court ordered Minor detained from Mother and Father's care, and she was placed with her maternal step-grandfather.  Both parents were granted three (separate) visits of three hours each per week.

In follow-up interviews with the Department in May 2017, Father disclosed he and Mother often had verbal arguments. Police had come to their home on several occasions because neighbors complained about the noise and Father sometimes sought help when Mother "[got] out of hand."  Minor said she was scared of her parents fighting, but she did not recall what happened between them in the car that triggered the filing of the dependency petition.  The maternal grandmother said Minor "panic[ked]" when she or the maternal step-grandfather raised their voices "even a little bit."

The juvenile court sustained the dependency petition and asserted jurisdiction over Minor in July 2017 based on domestic violence between the parents and Mother's marijuana use. Father was ordered to complete a parenting class and participate in individual counseling.[2]  He was granted monitored visitation.

---

[1]  In an amended petition filed in June 2017, the Department further alleged Minor was at risk of physical harm due to Mother's marijuana use.

[2]  Father told the social worker he believed his case plan was "forged" because there was "a line drawn through the 52-week domestic violence."  The juvenile court subsequently "verified

3

Just a couple months later, in October 2017, law enforcement officers arrested Father after he pushed Mother to the ground during an argument and subsequently climbed onto her car and broke the windshield.

As of December 2017, the Department reported Father had not visited with Minor since her birthday in July. Father attributed the lack of visitation to Minor's maternal step-grandfather "not answer[ing] his phone often." The Department reported, however, that Minor's caregivers "remained flexible with visitation and . . . offered to transport [her] to a location closer to [F]ather's whereabouts for visitation, but [F]ather continue[d] to demonstrate a pattern of inconsistency in regards to visitation" and did not "ma[k]e himself available to the Department to further discuss visitation." Minor's maternal step-grandfather indicated that, during previous visits, Father "engage[d] in rough play" with Minor and allowed her "to aggressively punch" him.

Nearly a year later, the Department reported Father had not begun individual counseling ordered as part of his case plan. Father told a Department social worker he would not enroll in any programs because he did not have a problem and did not believe he was required to do so. Father maintained he was a "'perfect parent'" and had not done anything wrong.

The juvenile court terminated family reunification services for both parents in December 2018, finding they had made "minimal" progress in their case plans. By the summer of 2019,

Father's case plan did not require him to complete a 52-week domestic violence program, but he was required to do individual counseling and parenting."

4

the Department reported Father was visiting Minor about twice per month and Minor's caregivers felt the visits were beneficial. One of Minor's caregivers reported Father had been "more consistent with his visits and ha[d] built a good relationship with the child." The Department also later reported Father visited Minor every Saturday at her caregivers' home and the caregivers were "willing to facilitate visits with him even after the legal guardianship is final."

Regular, beneficial visits continued through the first half of 2021 and Minor's caregivers told the Department Father "remain[ed] engaged with the child throughout his visit[s]." The caregivers had "no worries or concerns towards [F]ather's visits with [Minor]," and Minor reported she enjoyed the visits. In addition to in-person visits on weekends, Father indicated he and Minor talked on the phone and played video games together during the week.

In September 2021, on the eve of the hearing on the selection and implementation of a permanent plan for Minor, Father filed a changed circumstances petition asking the juvenile court to take the hearing off calendar and either place Minor in his custody or order further reunification services based on his consistent visitation and completion of the parenting class (14 sessions). The juvenile court denied Father's petition.

During the hearing at which the juvenile court ordered Minor placed under the legal guardianship of her maternal grandmother and step-grandfather and terminated jurisdiction, Father requested that he be granted unmonitored visitation based on his consistent visitation, completion of a parenting class, and "stable" lifestyle. Father alternatively requested the court order unmonitored visits inside the home of the legal

guardians or grant the legal guardians discretion to allow unmonitored visits. Counsel for Minor "submit[ted] the issue of liberalizing Father's visits further to the court," but noted that although Minor "ha[d] expressed that she does want unmonitored visits," there was "not much information about [Father's] compliance in domestic violence programs." The Department opposed Father's request for unmonitored visitation because, despite his completion of a parenting class, "he still ha[d]n't gained insight and he still ha[d] a massive amount of his case plan that he previously had the opportunity to complete . . . ."

The juvenile court ordered only monitored visitation for Father. The court reasoned as follows: "When the court orders a case plan for a parent, the purpose of the case plan is for the parent to complete the case plan so that they can either have the child—so they can have the child returned to them. Time has run out, and permanency planning is done. The case plan and lack of completion is still relevant to the court because it allows the court to determine and assess the safety issues moving forward with respect to the child. [¶] . . . [¶] When the court assessed [Mother and Father's changed circumstances] petitions, the court found . . . that neither parent ha[d] made any substantial progress in completing the case plan, and that is what the court has to gauge and use to evaluate the continuing safety for the child. [¶] The Father's—the only proof of completion is a parenting class. That does not address all of the issues that brought the case before the court. . . . So there remain[ ] ongoing safety issues, which the court believes justify the monitored visitation."

6

## II. DISCUSSION

Father contends the juvenile court's monitored visitation order was an abuse of discretion because there was no cause for concern regarding Minor's safety in his care when the juvenile court terminated jurisdiction in September 2021. This argument lacks merit under the governing deferential standard of review. The fact that Father was arrested for domestic violence after the juvenile court assumed jurisdiction over Minor plus Father's refusal to complete his court-ordered case plan provides adequate support for the juvenile court's determination that Minor should not yet be in his unsupervised care.

Father also contends the juvenile court's order terminating jurisdiction must be reversed and the matter remanded for compliance with ICWA. The Department agrees. As we shall explain, the juvenile court's failure to ask a relative present at the detention hearing whether he had information relevant to whether Minor is an Indian child under ICWA does warrant a conditional reversal of the juvenile court's order.

### A.   *The Juvenile Court Did Not Abuse Its Discretion in Ordering Monitored Visitation*

When the juvenile court orders a permanent plan of legal guardianship, it "shall also make an order for visitation with the parents or guardians unless the court finds by a preponderance of the evidence that the visitation would be detrimental to the physical or emotional well-being of the child." (Welf. & Inst. Code,[3] § 366.26, subd. (c)(4)(C).) At this stage of the proceedings,

---

[3]    Undesignated statutory references that follow are to the Welfare and Institutions Code.

7

the child's need for permanency and stability is paramount. (*In re S.H.* (2011) 197 Cal.App.4th 1542, 1559.) We review the trial court's visitation order for abuse of discretion. (*Id.* at 1557-1558; *In re Rebecca S.* (2010) 181 Cal.App.4th 1310, 1314.)

Father contends the juvenile court erred by ordering monitored visitation based on "factors that did not create a safety risk to [Minor]." It was appropriate, however, for the juvenile court to consider Father's failure to complete his case plan and his related insistence that he was a "perfect" parent. The passage of time since Father had been arrested for pushing Mother and breaking her windshield in October 2017 does not demonstrate the lack of a safety risk to Minor. Mother and Father had a long history of domestic violence, extending back to the 2013 dependency proceedings,[4] and the October 2017 violence that led to Father's arrest occurred after the juvenile court had assumed jurisdiction over Minor and while dependency proceedings were still underway. That Father would engage in such violence even while under the supervision of the juvenile court and the Department could rightly give the juvenile court pause in permitting unmonitored interaction between Father and Minor without more evidence Father in the interim had addressed domestic violence issues (or even acknowledged he had such issues).

Father believes, though, that the juvenile court should have given greater weight to his regular, positive visitation with

---

[4]     Indeed, the time between the earlier dependency proceedings in 2013 and the start of these proceedings in 2017 is roughly comparable to the time between the October 2017 pushing and windshield breaking incident and the September 2021 hearing that is the focus of this appeal.

8

Minor. Beneficial monitored visits do not, however, demonstrate that unmonitored visitation presented an acceptable level of risk. In any case, the argument is also self-defeating. Notwithstanding Father and Minor's shared desire that their visits be unmonitored, nothing in the record suggests Minor's interests—the juvenile court's focus at this stage of the proceedings—would be better served by unmonitored visitation. By all accounts, Minor was doing well under the status quo of monitored visitation and her legal guardians were flexible and accommodating.

### B. Remand Is Required Because the Juvenile Court Did Not Make Inquiry of a Detention Hearing Participant

Prior to the detention hearing in April 2017, both Mother and Father filed ICWA-020 Parental Notification of Indian Status forms indicating they were not aware of any Indian ancestry. During the hearing, when the juvenile court indicated it was unlikely to release Minor to Mother or Father, Mother's attorney asked the court to consider placement with the maternal grandmother or, in the alternative, "a second cousin who [was] in the courtroom . . . by the name of [S.L.] . . . ."

Notwithstanding Father and Mother's written attestations that they had no Indian ancestry, Father contends the juvenile court and the Department's ICWA-related inquiry fell short in several respects. These include the juvenile court's failure to verbally confirm the parents' representations, the juvenile court's failure to order the parents to inform the court if they subsequently received information providing a reason to know Minor is an Indian child, and the Department's failure to

9

interview other known relatives.[5]  The Department "agrees the order terminating jurisdiction should be reversed for the sole purpose of remanding the matter for compliance with the ICWA inquiry mandates."  We shall reverse and remand to permit inquiry of S.L., who was present at the detention hearing, and any additional extended family members the juvenile court directs.

Federal regulations implementing ICWA require state courts "at the commencement of the proceeding" to ask "each participant" in child custody proceedings whether they know or have reason to know that the child is an Indian child and to instruct the participants to inform the court if they subsequently receive information that provides reason to know the child is an Indian child.  (25 C.F.R. § 23.107(a).)  In adopting these regulations, the Bureau of Indian Affairs explained "[t]he court is to ask each participant in the proceeding, including attorneys, whether they know or have reason to know that the child is an Indian child.  Such participants could also include the State agency, parents, the custodian, relatives or trial witnesses, depending on who is involved in the case."  (81 Fed. Reg. 38803, emphasis added.)  California law similarly provides that, "[a]t the first appearance in court of each party, the court shall ask each participant present in the hearing whether the participant knows or has reason to know that the child is an Indian child.  The court shall instruct the parties to inform the court if they subsequently

---

[5]      The other relatives Father mentions in his opening brief include Minor's maternal great-grandmother; maternal grandmother, grandfather, and step-grandfather; two maternal aunts; paternal grandmother, grandfather, and step-grandfather; and two paternal aunts.

receive information that provides reason to know the child is an Indian child."  (§ 224.2, subd. (c).)

We believe S.L. qualifies as a "participant" under section 224.2, subdivision (c) and it was error for the juvenile court not to make ICWA inquiry of S.L.  That error alone necessitates a remand.

DISPOSITION

The juvenile court's monitored visitation order for Father is affirmed. The order terminating dependency jurisdiction is conditionally reversed and the cause is remanded with instructions to comply with section 224.2, subdivision (c) and, as conceded by the Department, section 224.2, subdivision (b).

If the aforementioned inquiry results in information indicating there is reason to know Minor is an Indian child, the juvenile court shall proceed in accordance with ICWA and related California law. If the aforementioned inquiry does not result in information indicating there is reason to know Minor is an Indian child, the court's order terminating jurisdiction shall be reinstated.


NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS


BAKER, J.

We concur:


RUBIN, P. J.


KIM, J.


12