Filed 3/17/23  In re M.O. CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re M.O. et al., Persons Coming Under the Juvenile Court Law. | B318783 |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> I.S., <br><br> Defendant and Appellant; <br><br> B.G., <br><br> Defendant and Respondent. | (Los Angeles County Super. Ct. No. 20CCJP06646A-B) |

APPEAL from orders of the Superior Court of Los Angeles County, Gabriela H. Shapiro, Judge Pro Tempore.  Affirmed.

Jacques Alexander Love and Jack A. Love, under appointment by the Court of Appeal, for Defendant and Appellant.

Dawyn R. Harrison, Interim County Counsel, Kim Nemoy, Assistant County Counsel, and Navid Nakhjavani, Principal County Counsel, for Plaintiff and Respondent.

Michelle D. Peña, under appointment by the Court of Appeal, for Defendant and Respondent.

—————————————————————

The juvenile court terminated jurisdiction after giving mother sole legal and physical custody of daughters M.O. and J.O. and issuing an order allowing father monitored visitation. Father appeals from the orders terminating jurisdiction and imposing monitored visitation, arguing they amounted to an abuse of discretion. We disagree and affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

**A.    Events Preceding the Detention Hearing**

I.S. (Father) and B.G. (Mother) lived separately. Their daughters M.O. (born 2019) and J.O. (born 2020) resided with Mother and maternal grandmother. Father lived with friends.

In August and September 2020, the Los Angeles County Department of Children and Family Services (Department) received referrals alleging general neglect and/or abuse by one or both parents or maternal grandmother. The referrals were unfounded. A Department social worker determined the allegations stemmed from the ongoing conflict between the parents over child visitation. Both parents were repeatedly advised to resolve their differences in family court through

2

mediation and court-ordered visitation. However, they did not follow through. Mother said she was afraid to do so because Father stalked her in the neighborhood and would not allow her to leave. Father said that no one could stop him from seeing his children.

Maternal grandmother and her relatives did not have a good relationship with Father. In October 2020, maternal grandmother obtained a restraining order against Father to protect herself and her children. According to maternal grandmother, Father had violated the restraining order on numerous occasions and had been arrested three times.

On November 15, 2020, the Department received a referral after Mother contacted law enforcement to report a domestic violence incident. M.O. was with Father for the day. When Mother arrived to pick her up, Father refused to surrender M.O. and walked away with her in a stroller. Mother followed, and Father struck her arm. Mother returned home and contacted police. Father was arrested.

On November 18, 2020, a Department social worker went to Mother's home to interview her. Upon arrival, the social worker noticed Father riding a bicycle. He was circling the dead-end street where Mother lived. During the interview, Mother confirmed the details of the reported domestic violence incident, adding that Father had also pushed her. Mother showed the social worker a bruise on her arm. Mother also said Father had blocked an Uber car in which she was sitting so she could not be driven away. Mother explained that Father harassed her, loitered in her neighborhood, and would not leave the area.

After interviewing Mother, the social worker encountered Father on a nearby street and stopped to interview him. Father

acknowledged the November 15, 2020 incident, but he denied hitting Mother. Father also acknowledged his prior arrests for violating maternal grandmother's restraining order. During the conversation, Father had a difficult time staying focused and kept moving around. He denied having any mental health or substance abuse problems.

Later the same day, Mother obtained a temporary restraining order to protect herself and her children from Father that was to expire in December 2020.

Father had a juvenile delinquency history from 2008 to 2010. As an adult, he was convicted of assault with a firearm and sentenced to four years in prison. From 2017 through 2020, Father had six arrests for violating his parole and two misdemeanor convictions for violating a protective order. He was still on parole at the time of the reported November 15, 2020 incident when he reportedly struck Mother's arm.

On November 25, 2020, Mother's friend was driving her to work, and Father jumped into the back of the truck. After kicking the truck window, he used a car jack to break the glass pane behind the passenger seat where Mother was sitting.

## B.    Detention Hearing

On December 17, 2020, the Department filed a petition alleging M.O. and J.O. came within the jurisdiction of the juvenile court under Welfare and Institutions Code[1] section 300, subdivisions (a)(1), (b)(1), and (b)(2). The petition alleged Father and Mother had a history of violent altercations and Mother

---

[1] Statutory references are to the Welfare and Institutions Code.

failed to protect the children because she allowed Father unlimited and unmonitored access to them. The petition further alleged Father's paranoid and aggressive behavior, for which he had failed to seek mental health services, placed his children at risk of serious harm.

At the December 22, 2020 detention hearing, the juvenile court ordered that the children remain with Mother and be detained from Father. The court ordered two-hour monitored visits with Father at a minimum of three times a week once the restraining orders or criminal protective orders currently in effect would allow.

On January 22, 2021, Father was arrested and incarcerated for violating his parole. He was released from custody on March 25, 2021.

## C. Jurisdiction and Disposition Hearing

On March 17, 2021, the juvenile court granted Mother's request for a temporary restraining order protecting her from Father.

On April 28, 2021, the juvenile court issued a permanent restraining order protecting Mother from Father. The order was to expire on October 23, 2021.

At the May 13, 2021 jurisdiction and disposition hearing, the juvenile court sustained the petition as pleaded under section 300, subdivision (b)(1) and (b)(2). The section 300, subdivision (a) allegations were dismissed. For disposition, the court ordered the children removed from Father and released to Mother. The court ordered two-hour monitored visits with Father at a minimum of three times a week once he was out of custody. Father was ordered to participate in a parenting program and individual counseling sessions to address issues of domestic violence and

5

substance abuse. He was also required to abide by the restraining order and conditions of parole.

## D.    Father's Visitation

Father's visits were to be monitored, but the Department social worker had difficulty finding available monitors. Father's relatives would not serve as monitors. Because no Human Services Aides were available in the beginning, the Department social worker agreed to monitor Father's visits when she could.

From May 13, 2021, through October 25, 2021, there were 23 scheduled visits. However only 12 visits occurred. Father canceled two visits because he was at a detoxification facility, and two visits because he had been arrested and incarcerated on four outstanding warrants, including one for breaking the window of the truck in which Mother was a passenger. Father canceled three more visits because he was sick or had overslept. Mother canceled two visits because she could not find anyone to drive her to the visit site. She explained that Father had threatened the people who would chauffeur her, so now they did not want to get involved. Mother canceled another visit because the children were ill. The social worker had to cancel one visit.

The monitors reported problems with Father's behavior toward Mother. At six of the 12 visits that occurred, Father yelled at Mother or attempted to challenge or intimidate her when she was arriving or leaving with the children. On occasion, the monitors had to demand that Father leave. They then stayed with Mother and the children to be sure Father had gone. Once, Father would not leave until the monitor threatened to call the police.

**E.     Section 364 Hearing and Termination of Jurisdiction**

At the January 31, 2022 contested section 364 hearing, the juvenile court terminated jurisdiction, granted Mother sole legal and physical custody of the children, and ordered Father's visits for two-hours, three times per week to remain monitored.  The monitor was to be someone mutually agreed upon by Mother and Father or a professional monitor paid for by Father.  The court stated, "The problem with the behavior that's currently reported, I don't believe that it would be in the children's best interest or safe for [Father] to have unmonitored contact."  The matter was continued for the final written orders and a progress report as to who would monitor Father's visits and assist with facilitating his visits.

In its last-minute information for the court filed on February 16, 2022, the Department noted Mother had extended the restraining order against Father for another three years or until 2024.  Mother informed the Department that neither her relatives nor Father's relatives were willing to monitor Father's visits because of his intimidating behavior.  She believed Father's best option would be to have a professional monitor.  The Department sent Father four referrals to agencies that provide professional, supervised visitation.

On February 28, 2022, the juvenile court received and filed the juvenile custody and visitation orders, lifted the stay and terminated jurisdiction.

Father timely filed a notice of appeal.

**DISCUSSION**

**A.     Applicable Law and Standard of Review**

When the juvenile court terminates jurisdiction, " 'section 362.4 authorizes it to make custody and visitation orders that

7

will be transferred to an existing family court file and remain in effect until modified or terminated by the superior court.' " (*In re Chantal S.* (1996) 13 Cal.4th 196, 203.) In determining custody or visitation, the court's primary consideration is the best interests of the child. (*Id.* at p. 206; accord, *In re T.S.* (2020) 52 Cal.App.5th 503, 513.) We review these orders for an abuse of discretion. (*In re C.W.* (2019) 33 Cal.App.5th 835, 863; *In re S.H.* (2011) 197 Cal.App.4th 1542, 1557–1558 ["dependency law affords the juvenile court great discretion in deciding issues relating to parent-child visitation, which discretion we will not disturb on appeal unless the juvenile court has exceeded the bounds of reason"].)

## B.    Juvenile Court Did Not Abuse Its Discretion

After the juvenile court placed M.O. and J.O. with Mother, it was fully authorized to terminate jurisdiction if termination would be in the best interest of the children. Here, the record provided every indication that the children were happy and thriving under Mother's care. The Department reported Mother "ha[d] gained new insight into how to protect herself and her children from future conflict" with Father. She also had a current restraining order against him and had moved to a new confidential location with M.O. and J.O. The children's wellbeing was no longer endangered by their exposure to Father's abusive relationship with Mother. As there were no outstanding safety concerns requiring the court's ongoing supervision of the children's placement with Mother, the court did not abuse its discretion in terminating jurisdiction.

Nonetheless, Father contends the juvenile court abused its discretion by terminating jurisdiction without a visitation plan that would ensure the court-ordered visitation would take place.

8

Father does not offer an alternative visitation order. Instead, he argues that simply reimposing the "generic" order of two hours of monitored visitation three times a week is insufficient. Father points to Mother's restraining order against him as a likely impediment to continued visits with his children.

There are no reports of Father's visitation after October 25, 2021, and nothing in the record explains the reason that no more visits were reported. In any event, Father's argument is hollow. It ignores the fact he was able to comply with this same "generic" order for monitored visitation from May 13 through October 25, 2021, when Mother had a permanent restraining order against him. The court properly required a monitor for Father's visits for the safety of Mother and the children. (See § 362.1, subd. (a)(1)(B) ["No visitation order shall jeopardize the safety of the child"].) Nonetheless, Father still attempted to intimidate Mother in the children's presence. As the juvenile court found, while Father had completed his required services, "[t]he problem is he hasn't really taken them to heart and demonstrated through his behavior that he understands what he needs to do in order to be safe with [his] children."

The problem is not with the visitation order. It is a problem of Father's own making. His threatening behavior extended to his and Mother's relatives as well as to other potential monitors. None were willing to supervise Father's visitation. In response, the Department provided him with a list of professional monitors to help him. It was his obligation to contact them. The court did not abuse its discretion in terminating jurisdiction and reimposing the prior monitored visitation. If Father wishes to have the visitation modified, he

9

can seek the assistance of family court.  (§§ 302, subd. (d), 362.4, subd. (b).)

## DISPOSITION

The orders are affirmed.

NOT TO BE PUBLISHED.


                                        LUI, P. J.

We concur:



CHAVEZ, J.



HOFFSTADT, J.

10