Filed 8/4/25  In re D.L. CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| In re D.L., a Person Coming Under the Juvenile Court Law. | |
| RIVERSIDE COUNTY DEPARTMENT OF PUBLIC SOCIAL SERVICES,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>M.P.,<br><br>    Defendant and Appellant.<br><br>D.L.,<br><br>    Respondent. | E085296<br><br>(Super.Ct.No. DPRI2400445)<br><br>OPINION |

APPEAL from the Superior Court of Riverside County.  Mona M. Nemat, Judge.

Affirmed.

Caitlin E. Howard, under appointment by the Court of Appeal, for Defendant and

Appellant.

1

Minh C. Tran, County Counsel, Teresa K.B. Beecham and Prabhath Shettigar, Deputy County Counsel, for Plaintiff and Respondent.

Sarah Vaona, under appointment by the Court of Appeal, for Respondent D.L.

M.P. (mother) challenges the findings and orders made during the contested jurisdiction and disposition hearings held on December 18 and 30, 2024. She contends the juvenile court (1) erred in asserting dependency jurisdiction because the evidence is insufficient to find her son, D.L., was at substantial risk of harm (Welf. & Inst. Code,[1] § 300, subd. (b)(1)), (2) erred in removing him from her care (§ 361, subd. (c)), and (3) abused its discretion in ordering supervised visitation. We reject her contentions and affirm.

## I. PROCEDURAL BACKGROUND AND FACTS

*A. Referral and Investigation.*

On September 19, 2024, Riverside County Department of Public Social Services (the Department) received a 10-day referral alleging emotional abuse and general neglect. Mother had sought medical treatment for injuries sustained during an incident of domestic violence perpetrated by her boyfriend, I.C; she disclosed two prior incidents of domestic violence with him. She stated she had been with him for six months and acknowledged he physically abused her. On September 8, I.C. did not let mother return to her home because the injuries he had caused were "bad." Her whereabouts were unknown until she went to urgent care on September 19. Mother denied contact between

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

2

I.C. and D.L., but admitted D.L. had seen the bruises on her face after each incident involving I.C. A no-negative contact criminal protective order had been in place against I.C. since June 21, 2024; it expires on July 2, 2027. A social worker spoke with D.L. who identified mother's boyfriend as I.C. and opined that he had hurt his mother because she came home with bruising on her face.

Mother agreed to participate in a safety plan, refrain from using drugs, not be alone with D.L. or drive him, and participate in a substance use disorder screening. Mother tested positive for amphetamine and methamphetamine, but claimed she was exposed to secondhand smoke. The Department provided her with a resource packet containing a list for domestic violence, anger management, counseling, parenting education, and substance use disorder services. Mother agreed to enroll in a domestic violence program. She was told that any violation of the safety plan could result in potential court involvement.

Further investigation revealed that D.L. (born January 2009) and mother were living with the maternal grandparents. According to the maternal grandfather, mother and D.L. had never resided outside the home since his birth, grandfather recently saw mother under the influence, D.L. is not around I.C., and the grandparents care for D.L. when mother leaves. The maternal grandmother stated, "the domestic violence and hitting has been more frequent and worsening." She opined the recent abuse damaged mother's cheekbone and eye socket. Law enforcement advised mother that I.C. will never change his behavior, and she will end up being killed.

The social worker interviewed D.L.'s father (A.L.) who stated he was aware of the domestic violence between mother and I.C., but was unaware whether it happened in the presence of their son. Previously, father had filed a missing person's report on mother's behalf because he believed I.C. was holding her hostage to heal and get better after a domestic violence incident. He expressed concern about mother's and I.C.'s use of methamphetamine. D.L. told father that "he is scared for his mother and said he did not understand why his mother was being hurt." Father planned to seek custody of D.L. and enroll him in counseling. The Department investigated father's home and found it clean with no safety concerns; father's drug test was negative. D.L.'s adult half siblings expressed concern for mother based on her relationship with I.C. On October 10, 2024, the social worker spoke with I.C. who denied any domestic violence incident with mother in September.

*B. Detention.*

On October 16, 2024, the Department initiated dependency proceedings pursuant to section 300, subdivision (b)(1). At the initial hearing on November 1, the juvenile court found a prima facie showing that D.L. came within section 300, subdivision (b), but did not detain him from either parent. The court ordered no contact with I.C. either in person or by phone. It directed the Department to submit drug testing referrals to the parents and conduct a safety plan assessment, including the maternal grandparents and adult siblings in the home. Father was found to be the presumed father of D.L. The hearing was continued. Mother demurred to the petition.

4

The Department filed an amended petition alleging (1) mother abuses controlled substances (including but not limited to methamphetamine) while providing care and supervision of D.L., (2) mother engages in domestic violence with I.C. resulting in bruises and injuries observed by D.L., and (3) father is aware of mother's substance abuse and dangerous relationship. It was further alleged that I.C. engaged in stalking behaviors leading to his arrest outside of mother's home where D.L. lived, thereby placing D.L. at risk of injury and/or neglect. As a result of these actions, the Department alleged that D.L. suffered or was at substantial risk of suffering serious physical harm or illness.

At the continued initial hearing, mother objected to the sufficiency of the evidence to support the Department's allegations and argued the petition failed to allege that D.L. suffered or was at substantial risk of suffering serious harm or illness. The juvenile court overruled the demurrer and found, if the allegations are taken as true, there is a substantial risk to the physical safety of D.L. since I.C. tracks mother, was arrested outside her home, and claims the children are making things up because they do not like him. It noted I.C. is currently on home confinement because of the domestic violence incident involving mother. Nonetheless, the court allowed D.L. to remain in the physical care and custody of his parents under a safety plan that prohibited mother from being alone with or driving D.L., prohibited D.L. from having any contact with I.C., required the maternal grandparents to supervise all contact between mother and D.L., and commanded another responsible adult to ensure that D.L. had the ability to get to and from school and any extracurriculars. The court also ordered the Department to provide

5

referrals for drug testing for both parents and complete one unannounced home visit before the next hearing. A contested jurisdiction hearing was set.

*C. Jurisdiction/Disposition Report and Jurisdiction Hearing.*

According to the jurisdiction/disposition report filed December 9, 2024, the Department recommended the juvenile court find the allegations in the amended petition true, declare D.L. a dependent of the court, and provide family maintenance services to both parents. A social worker reinterviewed D.L. who stated he felt safe at home with his grandparents, brothers, mother, and uncle and aunt. He said mother is still seeing I.C., but not at their home. D.L. attended high school, played Fortnite for fun, appeared well nourished and groomed, and his needs were met. Father was also interviewed, and he acknowledged mother's relationship with I.C. and I.C.'s arrest outside her home. Father opined that D.L. tunes out the fighting between mother and her boyfriend by playing video games. Father's on-demand drug test was negative for all screened substances except marijuana metabolites.

Mother failed to drug test four times in November 2024, and once in December 2024, but claimed she last used drugs on October 4. She stated she suffers from anxiety and depression, but denied taking any medications. She had yet to begin her domestic violence classes, but was speaking to someone regarding her substance use disorder screening. The Department provided her referrals for individual counseling and parenting classes.

On December 12 and 18, 2024, D.L.'s counsel expressed concerns about him remaining with mother because she was not attempting to demonstrate sobriety, not

6

consistently communicating with the Department, and the Department had been unable to see D.L. unannounced. Mother's counsel challenged jurisdiction and asked the juvenile court to consider the demurrer. She argued the evidence was insufficient to show that D.L. experienced serious physical harm or that he was at a substantial risk of physical harm. Counsel further argued mother's single positive drug test was insufficient to establish she was unable to provide for and adequately supervise D.L. given his stable living conditions, including other adult family members who provided guidance and supervision in their home. The Department submitted on its reports and recommendations. D.L.'s counsel joined in the Department's argument.

The juvenile court overruled mother's demurrer and sustained the allegations in the amended petition. The court found that mother engaged in "substantial, significant continued domestic violence," that she was using controlled substances, and that father failed to protect D.L. despite his knowledge of the domestic violence and drug use. According to the court, "The standard here is not that the minor was actually exposed to domestic violence.· The standard is that there is a substantial risk of physical harm to this minor." A disposition hearing was set.

D. *Addendum Report and Disposition Hearing.*

The Department submitted an addendum report on December 24, 2024, reiterating its prior recommendations. Mother was waiting for the new substance use disorder screening and had attended three domestic violence classes; her parenting classes were set to begin in January, and she had yet to speak with her counselor. On December 23, father informed the social worker that D.L. was living with him, and mother was kicked

7

out of the maternal grandparents' house following an incident between mother and the maternal grandmother where an uncle became involved and D.L. intervened to protect mother. Mother had not submitted any on-demand drug tests. The social worker's attempts to contact her were unsuccessful.

At the disposition hearing on December 30, 2024, the Department submitted on its reports and recommendations for the parents to receive family maintenance services. D.L.'s counsel requested the juvenile court order family maintenance services for father, but family reunification services for mother since she had not participated in drug testing, had not engaged in a program, and no longer had family support after being asked to leave the maternal grandparents' home. Mother was residing with father because of the severity of the domestic violence, and she had nowhere else to go. D.L.'s counsel was willing to submit on an order that mother is authorized to temporarily reside with father where D.L. is living, on the condition she not be left alone with him, not sleep in the same room, and not drive him anywhere. D.L.'s counsel added that mother had yet to provide proof of sobriety. Mother's counsel objected to any request to remove D.L. from mother, and argued mother had participated in the investigation and services prior to jurisdiction, is living with father temporarily, and is looking for housing. Father's counsel voiced no opposition to either the Department's recommendations or the suggestions by D.L.'s counsel.

At the contested disposition hearing, the juvenile court stated, "I will note that, at the onset at the out-of-custody, there was a safety plan put into place that the—that would include the maternal grandparents and the adult siblings in the home. That was the idea

8

behind the safety plan, and that safety plan was carried throughout until recently since mother has left that home and minor has moved in with father. At this time, the same kind of structure is not necessarily in place, and I don't have information regarding sobriety of mother. I don't have additional information to say that there is no longer an imminent risk of harm to this minor. So at this time, I am finding that continuance of the child in the home of mother is contrary to his welfare. The child will remain in the care and custody of father with department oversight and removal if necessary because there does exist a substantial danger to the physical and emotional health of this child at this time and no reasonable means to protect him." The court adjudged D.L. a dependent of the court, removed physical custody from mother, ordered maintenance services for father, and reunification services for mother. The court authorized mother to stay at father's house for a total of 60 days on the conditions outlined by D.L.'s counsel, and allowed D.L.'s adult siblings to monitor mother's contact along with father and any other relatives to ensure that she has no unsupervised contact with D.L. If she tests negative and engages in her programs, her stay may be extended. If she leaves father's home or enters an inpatient program, the court authorized weekly two-hour supervised visits. A six-month status review hearing was set. Mother appeals.

## II. DISCUSSION

### A. *Jurisdictional Findings.*

Mother contends the juvenile court erred in asserting dependency jurisdiction because the evidence is insufficient to find that D.L. came within section 300,

9

subdivision (b)(1), because he was not at substantial risk of harm at the time of the jurisdiction hearing. We disagree.

"'The purpose of California's dependency law is "to provide maximum safety and protection for children who are currently being physically, sexually, or emotionally abused, being neglected, or being exploited, and to ensure the safety, protection, and physical and emotional well-being of children who are at risk of that harm." [Citation.] In its effort to achieve this overarching goal, the law balances a number of vital interests: children's interests in safe and stable homes; parents' interests in raising their children; families' shared interests in each other's companionship; and the state's interest in protecting society's most vulnerable members.' [Citation.]

"'Dependency proceedings span up to four stages: jurisdiction, disposition, reunification, and permanency. [Citations.] At the jurisdictional stage, the juvenile court determines whether to declare a child a dependent of the court because the child is suffering, *or at risk of suffering*, significant harm.' [Citation.] '"A dependency adjudication is a preliminary step that allows the juvenile court, within specified limits, to assert supervision over the endangered child's care." [Citation.] After the juvenile court takes that preliminary step, the court may impose limitations on parental authority as necessary to protect the child. [Citations.] It may also order that the child be removed from a parent's physical custody if there is clear and convincing evidence that removal is necessary to protect the child from a substantial risk of harm. [Citations.] In some cases, a dependency adjudication may lead to termination of parental rights.' [Citation.]"
(*In re N.R.* (2023) 15 Cal.5th 520, 537, italics added (*N.R.*).)

10

Relevant to this case, the juvenile court may adjudge a child to be a dependent of the court under section 300, subdivision (b)(1)(A) ("there is a substantial risk that the child will suffer, serious physical harm or illness . . . [¶] . . . [by t]he failure or inability of the child's parent . . . to adequately supervise or protect the child") or (b)(1)(D) ("there is a substantial risk that the child will suffer, serious physical harm or illness . . . [¶] . . . [by t]he inability of the parent . . . to provide regular care for the child due to the parent's . . . substance abuse"). A jurisdictional finding under section 300, subdivision (b)(1), requires the social services agency to demonstrate the following three elements by a preponderance of the evidence: (1) neglectful conduct, failure, or inability by the parent; (2) causation; and (3) serious physical harm or illness or a substantial risk of serious physical harm or illness. (*In re Joaquin C.* (2017) 15 Cal.App.5th 537, 561; see *In re R.T.* (2017) 3 Cal.5th 622, 624.) These elements must be established as of the time of the jurisdictional hearing. (*In re J.N.* (2010) 181 Cal.App.4th 1010, 1022 (*J.N.*).) "[P]revious acts . . . standing alone, do not establish a substantial risk of future harm; there must be some reason beyond mere speculation to believe they will reoccur." (*In re Emily L.* (2021) 73 Cal.App.5th 1, 15.)

Mother asserts there is no connection between her substance use or the domestic violence between her and I.C., on the one hand, and the alleged risk as articulated in the statutory provisions, on the other. The burden of proof at the jurisdictional hearing is a preponderance of the evidence. (*Cynthia D. v. Superior Court* (1993) 5 Cal.4th 242, 248; § 355.) We apply the substantial evidence test to the juvenile court's jurisdictional findings. (*J.N.*, *supra*, 181 Cal.App.4th at p. 1022.)

*1. Mother's substance abuse.*

Mother asserts the finding that she excessively used drugs or alcohol was speculative because (1) her positive drug test on October 3 did not demonstrate she excessively used drugs or alcohol as required to establish drug abuse, (2) the social worker never reported that she appeared under the influence at the unannounced visit, (3) no family member raised concerns about drug use, and (4) D.L. felt safe at home, attended school, and appeared well nourished. Alternatively, she contends that even if the limited evidence of substance use supports the determination that she abused controlled substances, it is still insufficient to prove a "nexus" between her substance use and a substantial risk D.L. would suffer serious physical harm or illness. The Department and D.L. disagree.

"The provision of a home environment free from the negative effects of substance abuse is a necessary condition for the safety, protection and physical and emotional well-being of the child." (§ 300.2, subd. (a).) The juvenile court "'need not wait until a child is seriously abused or injured to assume jurisdiction and take the steps necessary to protect the child.'" (*In re L.W.* (2019) 32 Cal.App.5th 840, 849.) However, "drug use or substance abuse, without more, is an insufficient ground to assert jurisdiction in dependency proceedings under section 300." (*Ibid.*) As used in section 300, subdivision (b), "'substance abuse'" carries its "ordinary meaning" of an "excessive use of drugs or alcohol." (*N.R.*, *supra*, 15 Cal.5th at p. 531.) No diagnosis by a medical professional is required, nor must the prevailing criteria for a substance abuse disorder, as

12

specified within the Diagnostic and Statistical Manual of Mental Disorders, be satisfied. (*Ibid.*)

Here, substantial evidence supports the juvenile court's finding that mother's substance abuse posed a substantial risk of harm to D.L. Mother admitted that I.C. is a methamphetamine user and an alcoholic, but she continued to stay with him. In June 2024, police officers responded to a domestic violence call between mother and I.C. They searched mother's car and found "suspected narcotics including items commonly used in the sales of narcotics (Methamphetamine, prescription pills, working digital scale, several unused clear plastic zip-lock baggies (2x2), a 1/4 tsp, . . .), a used methamphetamine pipe, lighters, vape pen, straws, empty Q-tip box, laundry card, small bubble wrap, and an empty large zip-lock with white residue)." Mother said the items belonged to I.C. The officer opined that he is a "street level narcotics dealer."

Nonetheless, mother asserts that she stopped driving D.L. to alleviate any concerns that existed, and thus there was no nexus between her substance use and any defined risk of harm. Not so. Following her positive drug test on October 3, 2024, she failed to drug test on at least six occasions, between October 4 and December 4, despite agreeing to do so. Regarding her positive test, she claimed it was the result of I.C.'s "hotboxing" in her car, the same car she used on October 3 to drive D.L. to and from school. Mother's "implausible denial of drug use" and failure to test provide a reasonable basis for the juvenile court to disbelieve her assertion that she was not using drugs. (*In re E.E.* (2020) 49 Cal.App.5th 195, 214; *In re Christopher R*. (2014) 225 Cal.App.4th 1210, 1217 [mother missing a drug test was "properly considered the equivalent of a positive test

13

result . . . ." fn. omitted], disapproved on other grounds in *N.R.*, *supra*, 15 Cal.5th at p. 650, fn. 18; *In re Natalie A.* (2015) 243 Cal.App.4th 178, 186 [test was inconclusive due to a dilute urine sample, and father failed to show up for other drug tests he was ordered to take; "a reasonable inference could be drawn that father's marijuana use was more frequent than the one admitted instance . . . ."].)  As the juvenile court stated:  "I have a positive test.· I have no indication that there's sobriety in this case.· I have every indication and every reason to believe in light of the statements by father, in light of the positive test, that mother is using controlled substances."

Accordingly, substantial evidence supports the juvenile court's finding that mother's substance abuse presented a substantial risk that D.L. will suffer serious physical harm or illness.

2.  *Domestic violence between mother and I.C.*

According to mother, there is no nexus between her prior incidents of domestic violence with I.C. and an ongoing and current risk of harm to D.L.  Again, the Department and D.L. disagree.

We find sufficient evidence that at the time of the jurisdictional hearing, D.L. was at substantial risk of serious harm due to the domestic violence between mother and I.C.  The evidence of mother's domestic violence history consists of escalating incidents of I.C. injuring mother.  In June 2024, his arrest outside her home based on domestic violence warranted a no-negative contact criminal protective order, and in September, he would not allow her to return home because her injuries were "bad."  Mother stated that he has violated the no-negative contact order "multiple times."  Although mother kept

14

I.C. away from D.L., he still saw the outcome of their domestic violence incidents. According to father, D.L. is scared for his mother and does not understand why she was being hurt. Despite mother's claim that I.C. was not an integrated part of her life, D.L. had encountered him at least two times—one time in June when I.C. was arrested outside mother and D.L.'s home, and another time when D.L. was dropped off at father's house and I.C. was in the car.

"The subdivision[] at issue here require[s] only a 'substantial risk' that the child will be abused or neglected. The legislatively declared purpose of these provisions 'is to provide maximum safety and protection for children who are currently being physically, sexually, or emotionally abused, being neglected, or being exploited, and to ensure the safety, protection, and physical and emotional well-being of children *who are at risk of that harm*.' [Citation.] 'The court need not wait until a child is seriously abused or injured to assume jurisdiction and take the steps necessary to protect the child.' [Citation.] [¶] 'When a dependency petition alleges multiple grounds for its assertion that a minor comes within the dependency court's jurisdiction, a reviewing court can affirm the juvenile court's finding of jurisdiction over the minor if any one of the statutory bases for jurisdiction that are enumerated in the petition is supported by substantial evidence. In such a case, the reviewing court need not consider whether any or all of the other alleged statutory grounds for jurisdiction are supported by the evidence.'" (*In re I.J.* (2013) 56 Cal.4th 766, 773-774.) Contrary to mother's claim, the evidence supports a finding that "there is a substantial risk" that D.L. will suffer serious

15

physical harm given mother's toxic relationship with I.C., a controlling and violent man, and her inability to end the relationship despite claiming a desire to do so.

## B. *Disposition Order.*

### 1. *Removal.*

Mother contends the juvenile court erred by removing D.L. from her care because any risk to him was minimal and could be effectively addressed through other reasonable means. The Department submits on mother's contention, but D.L. argues the evidence supports the court's removal findings and orders.

Where removal from a parent is at issue, the juvenile court must make findings under section 361, subdivision (c). The court must find, by clear and convincing evidence, that "[t]here is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the [child] if the [child] were returned home," that there are no reasonable means short of removal to protect the minor, and that the social services agency made reasonable efforts to avoid removal. (§ 361, subd. (c)(1).) We review the court's removal findings for substantial evidence. (*In re I.R.* (2021) 61 Cal.App.5th 510, 520.)

Mother reiterates her prior claim that the circumstances that resulted in this dependency—the threat of domestic violence and mother's substance abuse—had significantly decreased by the time of the disposition hearing, and adds that she began a domestic violence class and was not driving D.L. around. She notes that she and D.L. had moved out of the maternal grandparents' home, but fails to explain why. According to father, mother had been kicked out of the grandparents' home following an incident

between mother and the maternal grandmother where an uncle became involved and D.L. intervened to protect mother. Moreover, mother had not submitted any on-demand drug tests.

Given the change in mother's living situation, D.L.'s counsel requested reunification services because mother had not participated in drug testing, had not engaged in a program, and no longer had family support after being asked to leave the maternal grandparents' home. While D.L. could safely remain with father, the same was not true with mother. Although father was allowing her to live with him, it was on a temporary basis, and she was looking for housing. Rather than order mother out of father's home, the juvenile court removed custody of D.L. from her and ordered a safety plan that included her not being alone with him and not driving him. The court explained that the prior safety plan that included the maternal grandparents and adult siblings was no longer available, and it had no information regarding her sobriety to decide there was no longer an imminent risk of harm to D.L.

We conclude the evidence was sufficient for the juvenile court to find that mother's substance abuse and toxic relationship with I.C. placed D.L. at substantial risk of harm, and there were no reasonable means short of removal to protect him.

*2. Supervised visitation.*

Finally, mother contends the juvenile court erred in ordering supervised visitation. We review a visitation order for abuse of discretion. (*In re S.H.* (2011) 197 Cal.App.4th 1542, 1557-1558.) There was no abuse of discretion here. Mother's claim that supervised visitation "was unnecessary to protect D.L., unsupported by the record, and

17

did not serve D.L.'s best interests" is, at best, speculative, since she had not participated in drug testing, had not engaged in any programs (other than attending three domestic violence classes), and no longer had family support after being asked to leave the maternal grandparents' home. As the juvenile court stated, "I don't have additional information to say that there is no longer an imminent risk of harm to this minor."

## III. DISPOSITION

The juvenile court's orders are affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

McKINSTER
Acting P. J.

We concur:

MILLER
J.

MENETREZ
J.

18